[No. 44878. En Banc. August 17, 1978.]

RAYMOND W. HOLLAND, *Respondent,* v. THE BOEING COMPANY, *Appellant.*

*Perkins, Coie, Stone, Olsen & Williams,* by *Steven S. Bell,* for appellant.

*Hugh Hafer* and *Hafer, Cassidy & Price* (*Hugh Spitzer,* of counsel), for respondent.

HAMILTON, J.—Appellant Boeing Company seeks review of a judgment in favor of respondent Holland. Appellant

was found to have violated RCW 49.60.180 by discriminating against respondent, a handicapped employee. We affirm the trial court's judgment.

Respondent, a 45-year-old man, has suffered from cerebral palsy since birth. His illness manifests itself in spontaneous muscular contractions of various portions of his body. In spite of this handicap, respondent has been gainfully employed with appellant for over 20 years. He progressed in employment from a Grade 5 Storekeeper to a Grade 9 Electronics Technician. As a technician, respondent analyzed electronics systems, performed routine checks on equipment, and made certain repairs. His handicap did not prevent him from adequately performing these tasks.

Sometime in 1974 appellant selectively reassigned respondent to an equal grade position in an area known as Facilities Support. On this new assignment, more manual dexterity was required of respondent than was required in the technician assignment. In addition, the work in the Facilities Support area included certified soldering which respondent was incapable of performing.

After the transfer to the Facilities Support area, respondent's work performance was closely monitored. As it became apparent he was not able to carry out his new assignments with an acceptable degree of competence, letters documenting his lack of ability were written and placed in his personnel file. He was given dexterity tests, the results of which further evidenced his deficiencies. Eventually, he was approached by a supervisor about the possibility of reassignment and reduction in grade.

Respondent, having spent almost 22 years advancing himself, expressed opposition to the downgrade. Appellant, in response to this opposition, made an effort to place him in an equal grade position. It circulated his personnel folder among various supervisors. The folder, however, then contained sufficient negative material to discourage supervisory interest in respondent. When efforts to place him in an equal grade position were unsuccessful, appellant offered him a Grade 5 Storekeeper position. Respondent initially

refused this offer, but upon reconsideration accepted. This lawsuit followed.

Respondent's case was tried to the court, sitting without a jury. His theory was that appellant committed an unfair practice by reassigning him to a job it knew, or reasonably should have known, he could not perform. The reassignment led directly to his downgrade, which he claimed was also an unfair practice.

Appellant denied any unfairness and contended it was not required to expend special effort on behalf of respondent or other handicapped employees.

The court, after hearing extensive testimony, determined that appellant was required by the terms of RCW 49.60 to make *reasonable accommodation* for handicapped employees. Using this standard, it concluded appellant's actions with respect to respondent constituted a violation of the law against discrimination, RCW 49.60.

Appellant makes five assignments of error. The first three relate to the reasonable accommodation standard and the sufficiency of evidence in support of the court's findings of fact and conclusions of law in this respect. Appellant's fourth assignment of error is to an award of attorney fees. The fifth is to an award for vacation time expended by respondent in the course of this lawsuit.

We have considered each of appellant's arguments in support of its assignments of error.

Appellant first argues the trial court erred by interpreting RCW 49.60 to require that employers make reasonable accommodation to the handicapped employee when reassigning personnel. The proper interpretation of RCW 49.60.180 as it relates to handicap discrimination is an issue of first impression.

RCW 49.60.180 is part of a comprehensive law by which the legislature declared it is an individual's *civil right* to be free from various types of discrimination. RCW 49.60.030. The express purpose of the law is the elimination of discrimination. RCW 49.60.010. And the legislature has

directed liberal construction of the provisions of RCW 49.60 in order to accomplish its purpose. RCW 49.60.020.

In 1973, the legislature amended the law against discrimination, RCW 49.60, to include a prohibition against discrimination in employment because of physical, mental, or sensory handicaps. It recognized that the disabled, like many minority groups, face serious problems in seeking employment. Laws of 1973, 1st Ex. Sess., ch. 214, § 1, p. 1648. Comment, *RCW 49.60: A Discriminating Look*, 13 Gonzaga L. Rev. 190 (1977). Legislation dealing with equality of sex or race was premised on the belief that there were no inherent differences between the general public and those persons in the suspect class. The guaranty of equal employment opportunities for the physically handicapped is far more complex.[1]

The physically disabled employee is clearly different from the nonhandicapped employee by virtue of the disability. But the difference is a disadvantage only when the work environment *fails* to take into account the unique characteristics of the handicapped person. *See Potluck Protections for Handicapped Discriminatees: The Need to Amend Title VII to Prohibit Discrimination on the Basis of Disability,* 8 Loy. Chi. L.J. 814 (1977). Identical treatment may be a source of discrimination in the case of the handicapped, whereas *different* treatment may eliminate discrimination against the handicapped and open the door to employment opportunities.

■■ RCW 49.60 contains a strong statement of legislative policy. *See* RCW 49.60.010 and .030. When, in 1973, the legislature chose to make this policy applicable to discrimination against the handicapped, we believe it is clear

---

[1] It is estimated that there are 22 million physically disabled persons in the United States, yet only 800,000 are employed. In addition, estimates put the number of persons suffering from mental retardation at 5.5 million. The economic cost of unemployment of these persons is obvious. The human cost, in terms of suffering or wasted lives, is distressing. Note, *Abroad in the Land: Legal Strategies to Effectuate the Rights of the Physically Disabled,* 61 Geo. L. Rev. 1501 (1973); *Equal Employment and the Disabled: A Proposal,* 10 Colum. J. Law & Soc. Prob. 457 (1974).

it mandated positive steps to be taken. An interpretation to the contrary would not work to eliminate discrimination. It would instead maintain the *status quo* wherein work environments and job functions are constructed in such a way that handicaps are often intensified because some employees are not physically identical to the "ideal employee".

Further, the concept of definitive relief, by means of a *reasonable accommodation* to the handicapped employee, is found in an administrative regulation issued pursuant to RCW 49.60. WAC 162–22–080.[2] The regulation, as the construction of the statute by those whose duty it is to administer its terms, is entitled to be given great weight. *Hama Hama Co. v. Shorelines Hearings Bd.*, 85 Wn.2d 441, 536 P.2d 157 (1975).

Thus, we hold the trial court correctly interpreted the meaning of RCW 49.60.180(1), (2), and (3).[3] It is an unfair practice for an employer to fail or refuse to make reasonable accommodations to the physical limitations of handicapped employees.

---

[2]WAC 162–22–080(1), which appears to address physical barriers, states:

"(1) It is an unfair practice for an employer to fail or refuse to make reasonable accommodations to the sensory, mental, or physical limitations of employees, unless the employer can demonstrate that such an accommodation would impose an undue hardship on the conduct of the employer's business."

[3] "It is an unfair practice for any employer:

"(1) To refuse to hire any person because of such person's age, sex, marital status, race, creed, color, national origin, or the presence of any sensory, mental, or physical handicap, unless based upon a bona fide occupational qualification: *Provided,* That the prohibition against discrimination because of such handicap shall not apply if the particular disability prevents the proper performance of the particular worker involved.

"(2) To discharge or bar any person from employment because of such person's age, sex, marital status, race, creed, color, national origin, or the presence of any sensory, mental, or physical handicap.

"(3) To discriminate against any person in compensation or in other terms or conditions of employment because of such person's age, sex, marital status, race, creed, color, national origin, or the presence of any sensory, mental, or physical handicap: *Provided,* That it shall not be an unfair practice for an employer to segregate washrooms or locker facilities on the basis of sex, or to base other terms and conditions of employment on the sex of employees where the board by regulation or ruling in a particular instance has found the employment practice to be

In adopting this standard, we reject appellant's suggestion that we follow the de minimus effort test set forth in *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 53 L. Ed. 2d 113, 97 S. Ct. 2264 (1977). *Hardison* did not involve a handicapped individual; rather, it involved religious discrimination. Thus, its test was defined in a case arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1) (1970). Congress has not chosen to prohibit handicap discrimination under Title VII. Instead, it has enacted the Rehabilitation Act of 1973, 29 U.S.C. §§ 701-94 (Supp V, 1975), to secure employment opportunities for the handicapped.[4] Congress recognized, as do we, that discrimination on the basis of handicap is different in many respects from other types of employment discrimination. *See* Wright, *Equal Treatment of the Handicapped by Federal Contractors*, 26 Emory L.J. 65 (1977). Accordingly, we are not persuaded by appellant's contention on this score.

Appellant next argues that even if Washington law requires reasonable accommodation to the handicapped, reversal is warranted since there is *no* evidence to support the trial court's findings and conclusions that it failed to accommodate respondent.

■ Where the trial court has weighed the evidence our review is limited to determining whether the findings are supported by substantial evidence and, if so, whether the findings in turn support the trial court's conclusions of law and judgment. *Morgan v. Prudential Ins. Co. of America*, 86 Wn.2d 432, 545 P.2d 1193 (1976). Substantial evidence is evidence in sufficient quantum to persuade a fair-minded

---

appropriate for the practical realization of equality of opportunity between the sexes." RCW 49.60.180.

[4]A clause in the federal regulations issued under the Rehabilitation Act of 1973, 29 U.S.C. § 793 (Supp. V, 1975), which mandates effectual hiring of physically disabled workers by employers contracting with the federal government for $2,500 or more, requires that contractors must make reasonable accommodation to the physical limitations of an employee *unless* it demonstrates such an accommodation would impose an undue hardship. 41 C.F.R. § 60-741.6(d) (1977).

person of the truth of the declared premise. *In re Snyder,* 85 Wn.2d 182, 532 P.2d 278 (1975).

The record in this case reflects appellant was aware of respondent's disability and physical limitations. In fact, some years prior to this litigation respondent had attempted to receive certification in soldering and was unable to do so. Further, the record contains substantial testimony regarding appellant's transfer procedures. Several options were potentially available to appellant which would have accommodated respondent. The appellant, however, chose not to accommodate him. It shifted respondent to a position in which the trial court found it should have known he could not succeed. It then downgraded him. The trial court concluded these actions were unfair practices. The challenged findings of fact upon which the court's conclusions rest are supported by the record, and we cannot substitute our judgment for that of the trial court. *Seattle–First Nat'l Bank v. Brommers,* 89 Wn.2d 190, 199, 570 P.2d 1035 (1977).

Appellant further contends the evidence presented by respondent does not meet his burden of proof as it fails to prove he was qualified for another available position. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973).

▮ Appellant's argument ignores the essence of respondent's complaint, which is: Arbitrary removal from an otherwise available position and placement in a position where, because of his handicap, he was destined to fail. *McDonnell Douglas* is a failure–to–employ case; the discrimination here alleged by respondent arose from a discriminatory *transfer*. Respondent met his burden of proof by showing the transfer was not the *necessary* result of a reduced workload, since the appellant could have utilized a procedure such as lateral transfers in order to accommodate him.

Appellant's fourth assignment of error is to the award of attorney fees. It contends that under *Sprogis v. United Air Lines, Inc.,* 517 F.2d 387 (7th Cir. 1975), an award is

improper where, as here, the costs of litigation are assumed by a labor union.

*Sprogis* stands for the proposition that special circumstances may render an award of attorney fees unjust. In that case, the court, relying on *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 19 L. Ed. 2d 1263, 88 S. Ct. 964 (1968), refused to award a union attorney fees under Title VII. The union had pressed a lawsuit for a nominal plaintiff, in spite of a settlement offer. It used the suit as a vehicle by which to circumvent an agreement with United Air Lines and never disclosed its interest in the suit to United. The court recognized the trial court's discretion in awarding fees and simply stated that the underlying circumstances in *Sprogis* did not warrant an award. *Sprogis* does not define a rule prohibiting attorney fees to union sponsors.

█ RCW 49.60.030(2)[5] provides for an award of reasonable attorney fees. We have consistently held that such an award is within the trial court's discretion. We will overturn the court's award only if there exists a manifest abuse. *State v. Ralph Williams' North West Chrysler Plymouth, Inc.,* 87 Wn.2d 298, 553 P.2d 423 (1976); *St. Paul Fire & Marine Ins. Co. v. Chas. H. Lilly Co.,* 46 Wn.2d 840, 286 P.2d 107 (1955).

There are no special circumstances in this case which indicate the court's award was an abuse of discretion. Awards to union sponsors are supported by RCW 49.60.020, which directs us to give the provisions of the law against discrimination a liberal interpretation. Such awards will encourage unions to sponsor litigation on behalf of aggrieved members who are unable to afford the expense

---

[5] "(2) Any person deeming himself injured by any act in violation of this chapter shall have a civil action in a court of competent jurisdiction to enjoin further violations, to recover the actual damages sustained by him, or both, together with the cost of suit including a reasonable attorney's fees or any other remedy authorized by this chapter or the United States Civil Rights Act of 1964; . . ." RCW 49.60.030(2).

personally. *State v. Ralph Williams' North West Chrysler Plymouth, Inc., supra.*

Appellant also argues that if it is liable for fees it is obliged to pay only one–half since respondent prevailed on only one of two claims. While results achieved are an element of an award of attorney fees, the amount of allowable fees is within the discretion of the trial court. We find no abuse of discretion.

Appellant's fifth assignment of error is to the trial court's award of damages. The appellant was required to reimburse respondent for vacation time expended during trial. It argues this requirement is contrary to the statute and respondent's union contract.[6]

The trial court awarded damages pursuant to RCW 49.60.030(2), which authorizes recovery of actual damages and costs of suit. This statutory authorization, taken together with the legislative direction of liberal construction of the law, is broad enough to sustain the award for expended vacation time. The respondent's union contract is independent of RCW 49.60. Assuming an independent provision could control the statute, we have been presented with no evidence of its proper construction. The court exercised, as it must, responsible and informed discretion in setting the amount of damages. We will not substitute our judgment for that of the trial court. *V.C. Edwards Contracting Co. v. Port of Tacoma,* 83 Wn.2d 7, 514 P.2d 1381 (1973); *Harvey v. Wight,* 68 Wn.2d 205, 412 P.2d 335 (1966).

The judgment of the trial court is affirmed, and respondent's request for attorney fees on appeal is granted. However, respondent has already been granted a substantial award of fees. Under these circumstances, as well as the

---

[6]Section 6.1(k) of the respondent's union contract provides employees will be paid at the regular rate if called as a witness *unless* the employee is called as witness on his own behalf in an action in which he is a party.

surrounding facts, we remand the case to the trial court for determination of the appropriate amount of such an award.

WRIGHT, C.J., and ROSELLINI, STAFFORD, BRACHTENBACH, HOROWITZ, DOLLIVER, and HICKS, JJ., concur.

UTTER, J. (concurring)—I strongly support the underlying aims of RCW 49.60 to free individuals from various forms of discrimination and concur in much of what the majority states regarding this act. There is an obligation on the part of employers to make a *reasonable accommodation* to handicapped employees. That term, however, makes use of the word "reasonable" and the effort demanded of employers should not be more than that. Boeing Company, in fact, made several efforts to accommodate respondent's handicap and still retain him at the same level of employment. The court specifically found that Boeing's efforts to make a suitable placement for him "were greater than the efforts they would have made were he not handicapped."

I believe it was Holland's obligation to prove that a job existed at Boeing for him at the level at which he sought to be retained, and that he was qualified for that position. There were many jobs he admitted he could not perform and skills he did not have. The court's findings of fact are supported, however, by testimony in the record. Although I would have concluded Boeing did make a reasonable accommodation to Holland, we will not substitute our view of the facts for that of the trial court.

BRACHTENBACH and HICKS, JJ., concur with UTTER, J.