98 F.3d 1346
 8 NDLR P 377
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Frank W. SMITH and Dorothy L. Smith, Plaintiffs-Appellants,
v.
ISLAND TRANSIT, a Washington municipal corporation, and
Martha Rose and John Doe Rose, a marital
community, Defendants-Appellees.
 No. 95-35602.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 11, 1996.
Decided Oct. 9, 1996.
 
 Before: REAVLEY,* REINHARDT and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Smith appeals the district court's judgment in favor of Defendants Island Transit and its executive director Martha Rose. Smith, the maintenance manager at Island Transit, asserts that Island Transit and Rose violated both state and federal disability laws and that they breached their contract with him when he was terminated in March of 1993. We affirm.
 
 I.
 
 3
 Smith was the manager of the maintenance department for Island Transit, which operates a mass transit system serving the Island County Public Transportation Benefit Area. As maintenance manager, Smith supervised one other mechanic. Martha Rose was the executive director of Island Transit and Smith's supervisor. Smith's affidavit indicates that he "received no written or verbal communications which led [him] to believe that [his] performance was deficient in any way until approximately one month prior to [his] termination. By that time, [he] was having serious problems emotionally, being quite hopeless, stressed out, and having a difficult time dealing with people."
 
 
 4
 By February of 1993, Smith's performance unquestionably deteriorated. In a series of three memos, Rose outlined some of the problems she was having with his performance. The first memo, sent on February 10, established a deadline for the completion of an inventory control system for the parts in the maintenance area. The second memo sent in early March outlined Smith's failure to meet that deadline as well as numerous other problems which had occurred in his division since January. Finally, the third memo sent on March 15, confirmed a meeting held on March 12 in which Smith was fired.
 
 
 5
 Rose met with Smith on Friday, March 12 to again discuss the many problems she was having with his performance. For whatever reason, Rose decided in that meeting to terminate Smith. After Rose Terminated Smith, Smith "asked her to hold off on her decision for five days until [he] could find out how long [he] was going to be under treatment."[1] Up to that point in time, Smith had never informed any member of Island Transit or his direct supervisor Rose that he had met with a psychiatrist on Monday earlier that week. During their meeting, Rose twice left the room to reconsider her decision to terminate Smith. Both times she returned, and both times she reasserted her decision.
 
 
 6
 On March 15, Smith met with his psychiatrist who prescribed Prozac and began treating Smith for clinical depression. Later, Smith brought this action alleging that his termination was based upon his disability in violation of both state and federal disability laws. Smith also asserted that Island Transit breached the employment contract contained in its employee manuals by not terminating him for "good cause." The district court, relying on the recommendation of a magistrate, granted summary judgment for Island Transit and Rose.
 
 II.
 
 7
 We review the grant of a summary judgment de novo.[2] "Viewing the evidence in the light most favorable to the nonmoving party, the court must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relavant substantive law."[3] The critical question under both Washington State's Law Against Discrimination[4] and the federal American Disabilities Act[5] is whether Smith's termination was "because of" his disability.
 
 A. Washington's Law Against Discrimination
 
 8
 The Washington law against discrimination provides that "[i]t is an unfair practice for any employer ... [t]o discharge or bar any person from employment because of ... the presence of any sensory, mental, or physical handicap [now disability.]"[6] To be considered "disabled" under the LAD, Smith "must show 'both (1) the presence of an abnormal condition, and (2) employer discrimination against [him] because of that condition.' "[7] Smith need only prove that his disability was a "substantial factor" in his employer's decision to fire him.[8]
 
 
 9
 "The duty of an employer reasonably to accommodate an employee's handicap does not arise until the employer is 'aware of respondent's disability and physical limitations.' "[9] "The employee bears the burden of giving the employer notice of the disability."[10] "This notice then triggers the employer's burden to take 'positive steps' to accommodate the employee's limitations."[11] This employer is not required to investigate an employee suspected of having a disability; rather, the employer's duty does not arise until after the employee has initiated the process by notice "and extends only to assuring the employer sufficient information to accommodate the disability."[12]
 
 
 10
 Washington requires an affirmative duty on the employee to notify the employer of his or her disability. As the discussion above indicates, Smith made no disclosure of his potential illness until after he had been informed by Ross of her intention to fire him. In fact, it is not clear that Smith himself knew he suffered from a disability until he returned to the doctor the Monday after he was fired. The district court correctly granted the defendants' summary judgment on the state claim.
 
 B. The Americans with Disabilities Act
 
 11
 No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.[13]
 
 
 12
 Smith asserts that he was fired because of his mental disability. He asserts that Island Transit was aware of his disability before he was terminated. Smith argues that Rose withdrew her initial decision to fire him on two occasions to reconsider the decision. Further, he asserts that there was a causal connection between his termination and the disability, that is, his disability had caused his attitudinal and communicative problems. We will repeat what we said before.
 
 
 13
 Smith cites Kimbro v. Atlantic Richfield Co.[14] for the proposition that "as long as an employer is on notice an employee suffers from a medical condition, it may be liable under the handicap discrimination law."[15] In Kimbro Atlantic Richfield did argue that it was unaware of Kimbro's disability which barred his recovery. The court disagreed, noting that "ARCO was in fact on notice of Kimbro's condition as a result of Kimbro's supervisor's full awareness of his condition and thus must be held responsible for any failure to attempt a reasonable accommodation."[16] The record extensively demonstrated Kimbro's supervisor's knowledge of his condition and the debilitating effects of it. "The record reveals that Kimbro frequently discussed his condition with Jackson [his supervisor], Jackson knew Kimbro was receiving medication and treatment for the condition, and Jackson personally witnessed the debilitating effects of the headaches."[17] Following traditional agency principles, the court in Kimbro imputed the knowledge of Jackson, his supervisor and a manager at ARCO, to ARCO.[18]
 
 
 14
 This case presents none of the factors which existed in Kimbro. First, Smith made no effort to inform his superior that he was suffering from a disability. Second, despite his attempt to characterize the March 12 meeting, Smith was fired and despite his suggestion that he would see a doctor, that decision was not rescinded by Rose. And finally, it is not clear that Smith knew he had a disability at the time of the March 12 meeting. Dr. Lovvorn, Smith's psychiatrist, declared in an affidavit that Smith's "clinical depression was suspected at his initial visit. During the initial visit, I spoke with him, took history, and asked him to return in one week, on March 15, 1993, to discuss a treatment plan.... My diagnosis of his condition was Dysthymic Disorder, DSM II R-300.40. He was begun on Prozac (20 mg daily) and was seen weekly for psychotherapy." Smith's affidavit indicates that as a result of his "serious problems emotionally, being quite hopeless, stressed out, and having a difficult time dealing with people," he "decided to see a psychiatrist. When [he] saw the psychiatrist, [the psychiatrist] began to talk to [Smith] about [Smith's] problems. This was on March 8, 1993. When the session ended, [the psychiatrist] told [Smith] to come back in a week so that [they] could determine what needed to be done to make [Smith] better. An appointment was made for Monday, March 15."
 
 
 15
 Smith was not terminated "because of" his disability, and we are unable to impute any knowledge of his disability upon his employer. "Courts have recognized a distinction between termination of employment because of misconduct and termination of employment because of a disability."[19] The district court appropriately granted the defendants' summary judgment on the ADA claim.
 
 III.
 
 16
 Finally, Smith asserts that the specific promises of treatment contained in Island Transit's employee manuals represented an implied contract. There are two manuals at issue in this case--the Operator's Manual and the Island Transit Personnel Policies. He asserts that either manual could be construed to require just cause for discharge.
 
 
 17
 There is no question that the Operator's Manual applies only to bus drivers and not to Smith. Throughout the manual it discusses the goals of being a professional Transit Operator, including "[b]eing friendly, helpful, and considerate to your passengers" and "[o]perating your coach skillfully, providing a smooth and comfortable ride."[20] The manual discusses the operators' responsibility to their coach, its brakes, tires, etc. The discipline guide in Section V, which Smith asserts was not followed, provides steps for disciplining the drivers.
 
 
 18
 The Personnel Policies manual would appear to apply to Smith. Section VII, paragraph C, outlines terminations: "The termination of any employee from ISLAND TRANSIT shall be determined by the employee's supervisor for reasons as determined appropriate, subject to the approval of the Executive Director." Smith asserts this language indicates that he could only be terminated for "good cause." Smith's problem is that the Personnel Policy manual was not intended to be a contract with the employees and contained a disclaimer in this regard. The disclaimer contained in the Purpose section, provides that "the personnel policies ... do not in any way constitute a contractual agreement between the employees of ISLAND TRANSIT and ISLAND TRANSIT."
 
 
 19
 "Generally, an employment contract, indefinite as to duration, is terminable at will by either the employee or employer."[21] "However, such a contract is terminable by the employer only for cause if (1) there is an implied agreement to that effect or (2) the employee gives consideration in addition to the contemplated services."[22]
 
 
 20
 "[I]f an employer, for whatever reason, creates an atmosphere of job security and fair treatment with promises of specific treatment in specific situations and an employee is induced thereby to remain on the job and not actively seek other employment, those promises are enforceable components of the employment relationship."[23] Nevertheless, "[i]t may be that employers will not always be bound by statements in employment manuals. They can specifically state in a conspicuous manner that nothing contained therein is intended to be part of the employment relationship and are simply general statements of company policy."[24]
 
 
 21
 The Operator's Manual without question did not apply to Smith. The Personnel Policies manual contained a specific disclaimer indicating that it was not intended to represent a contract between Island Transit and its employees.[25] The two manuals did not create an implied contract with Smith.[26]
 
 
 22
 AFFIRMED.
 
 
 
 *
 Honorable Thomas M. Reavley, Senior United States Circuit Judge for the United States Court of Appeals, Fifth Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Smith Deposition p. 154
 
 
 [2]
 Collins v. Longview Fibre Co., 63 F.3d 828, 831 (9th Cir.1995), cert. denied, 116 S.Ct. 711 (1996)
 
 
 [3]
 Id
 
 
 [4]
 Was.Rev.Code § 49.60.010 et seq
 
 
 [5]
 42 U.S.C. § 12101 et seq
 
 
 [6]
 Was.Rev.Code 49.60.180; Collins, 63 F.3d at 835
 
 
 [7]
 Hume v. American Disposal Co., 880 P.2d 988, 995-96 (Wash.1994), cert. denied, 115 S.Ct. 905 (1995)
 
 
 [8]
 Mackay v. Acorn Custom Cabinetry, Inc., 898 P.2d 284, 310 (Wash.1995)
 
 
 [9]
 Goodman v. Boeing Co., 899 P.2d 1265, 1269 (Wash.1995) (quoting Holland v. Boeing Co., 90 Wash.2d 384, 391, 583 P.2d 621 (1978))
 
 
 [10]
 Goodman, 899 P.2d at 1269
 
 
 [11]
 Id. (quoting Holland, 90 Wash.2d at 388-89, 583 P.2d 621)
 
 
 [12]
 Goodman, 899 P.2d at 1270
 
 
 [13]
 42 U.S.C. § 12112(a) (emphasis added)
 
 
 [14]
 889 F.2d 869 (9th Cir.1989), cert. denied, 111 S.Ct. 53 (1990)
 
 
 [15]
 Appellant's Brief, p. 11
 
 
 [16]
 Kimbro, 889 F.2d at 874
 
 
 [17]
 Kimbro, 889 F.2d at 875
 
 
 [18]
 Kimbro, 889 F.2d at 876-77
 
 
 [19]
 Collings, 63 F.3d at 832. Smith attempts to distinguish Collings and other cases by limiting those cases to situations where the employer has no knowledge of the disability. See also Hedberg v. Indiana Bell Telephone co., 47 F.3d 928 (7th Cir.1995); Landfeld v. Marion Gen. Hosp., 994 F.2d 1178 (6th Cir.1993). Essentially, the question here is whether notification counts when it is done at the time an individual is being fired. We hold that it does not
 
 
 [20]
 Operator's Manual, Foreword, p. I
 
 
 [21]
 Thompson v. St. Regis Paper Co., 685 P.2d 1081, 1084 (Wash.1984)
 
 
 [22]
 Id
 
 
 [23]
 Thompson, 685 P.2d at 1088
 
 
 [24]
 Id
 
 
 [25]
 The Magistrate Court also noted that the exact wording of the termination provision which permitted termination by an employee's supervisor "for reasons determined appropriate" does not equate to being terminated for "good" or "just" cause. Memorandum Order p. 8-9
 
 
 [26]
 See Hibbert v. Centennial Villas, Inc., 786 P.2d 309, 311 (Wash.Ct.App.1990) ("An express agreement affirming the terminable-at-will relationship precludes a party from claiming an implied contract to the contrary.")