# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Detention of | ) | No. 70410-9-I |
| | ) | |
| S.C., | ) | DIVISION ONE |
| | ) | |
| Appellant. | ) | UNPUBLISHED OPINION |
| | ) | |
| | ) | FILED: July 28, 2014 |
| | ) | |

APPELWICK, J. — S.C. appeals the revocation of her conditional release to outpatient treatment during her commitment for involuntary mental health treatment. S.C. asserts that the trial court's factual finding that she experienced a substantial deterioration in functioning is not supported by substantial evidence. We affirm.

## FACTS

Between June 2012 and March 2013, S.C. agreed to various orders of commitment for involuntary mental health treatment. On April 1, 2013, a mental health court commissioner entered an agreed order for 180 days of less restrictive outpatient mental health treatment. The order directs S.C. to reside in independent housing in Tukwila and participate in treatment at Sound Mental Health.

On May 6, 2013, a King County designated mental health professional filed a petition for revocation of S.C.'s conditional release to less restrictive alternative treatment. The petition indicates that S.C. was detained at the hospital where "Harborview Psychiatric Emergency Services and Sound Mental Health after hours called Crisis and Commitment Services." A declaration of crisis worker Owen Riley accompanied the petition. In his declaration, Riley

stated that S.C. was "too disoriented/disorganized to participate in a plan for safe discharge into the community." As grounds for revocation under RCW 71.05.340(3)(a), the petition alleges that S.C. was (1) failing to adhere to the terms and conditions of her less restrictive treatment order; (2) demonstrating a substantial deterioration of functioning; and/or (3) showing evidence of substantial decompensation that, with reasonable probability, could be reversed by further inpatient treatment.

At a hearing on May 10, 2013, Dr. Rachel Eisenhauer, a clinical psychologist, testified that she last evaluated S.C. in the hospital on March 15, 2013. Dr. Eisenhauer stated that S.C. "indicated to me that she was told that they were waiting for her to have a discharge plan," but she "had no idea what the plan might be and indicated that it was up to the doctors." When Dr. Eisenhauer asked if she had a place to live, S.C. said, "'[H]old on. I'm trying to think. No, I don't. I don't know where I want to go.'" Dr. Eisenhauer described S.C. as vague, with meandering and incomplete thoughts, confused, irritable, suspicious, and tangential. On cross-examination, Dr. Eisenhouer clarified that S.C. was "just confused" but not "very confused." She also explained that "Tangential makes a presumption you're starting at the right point, and then you go off on a different direction; whereas, non-responsive means you never even started at the right point."

Owen Riley, an after-hours crisis worker and mental health clinician at Sound Mental Health, testified that he visited S.C. at the hospital on May 5, 2013, to evaluate her for possible revocation of the less restrictive order. Riley testified

2

that S.C. "was minimally responsive . . . and had a very hard time answering any . . . questions. . . . And pretty much almost none of the answers really fit the question, which indicated to me that she was pretty disorganized." Riley testified that S.C. "was not able to really communicate" when he asked her about where she lived, what she would do for food, or how she would take care of herself outside the hospital. Based on his visit to S.C. and his review of her clinical record, Riley concluded that S.C. "was disorganized and decompensated to the extent that she was not able to take care of herself out in the community and that the less restrictive order should be revoked."

Dr. Corre Spence testified that she reviewed S.C.'s chart, consulted her psychiatrist, reviewed her treatment team recommendations, and listened to the testimony at the hearing, but that S.C. had declined an interview. Dr. Spence testified that the chart indicated that during her current hospitalization at Fairfax Hospital, S.C. acknowledged auditory hallucinations; had impaired concentration and difficulty attending to a conversation with a therapist on May 7; and on May 9, refused to answer any staff questions, appeared internally preoccupied, made bizarre, irrelevant statements, and later pushed another patient while walking, causing the other patient to fall down. When asked for her opinion on whether S.C. had suffered a substantial deterioration in functioning, Dr. Spence responded,

> Based on the testimony of her evaluation . . . in March, it's clear from the notes of that interview that she was able to respond appropriately to questions. That her thoughts were more clear and goal-directed. That she was able to be engaged in the discussion

of her discharge plan, discussion of her place to live, so she was able to be planful and interact more meaningfully with others.

Since her admission to Fairfax, she's been highly confused and disorganized, disoriented. She's largely been unable to interact meaningfully with staff at all.

Following the hearing, the trial court found that a substantial deterioration of S.C.'s functioning had occurred, revoked her less restrictive alterative treatment, and remanded her to the hospital for inpatient treatment.

S.C. appeals.

## DISCUSSION

RCW 71.05.340(1) authorizes the court to conditionally release a committed person who, in the opinion of the mental health treatment provider, can be appropriately served by outpatient treatment. When considering a petition for conditional release, the court must determine at a hearing "whether or not the person may be conditionally released without substantial danger to other persons, or substantial likelihood of committing criminal acts jeopardizing public safety or security." RCW 71.05.340(1)(b). "If the court disapproves of the conditional release, it may do so only on the basis of substantial evidence." RCW 71.05.340(1)(b).

The mental health treatment provider may petition the court to revoke an order for conditional release on the following grounds:

(i) A conditionally released person is failing to adhere to the terms and conditions of his or her release;

(ii) Substantial deterioration in a conditionally released person's functioning has occurred;

(iii) There is evidence of substantial decompensation with a reasonable probability that the decompensation can be reversed by further inpatient treatment; or

(iv) The person poses a likelihood of serious harm.

RCW 71.05.340(3)(a). At a hearing on the petition, the court determines whether any of the grounds have been met, and if so, "whether the terms of conditional release should be modified or the person should be returned to the facility." RCW 71.05.340(3)(d). According to RCW 71.05.340(5), "The grounds and procedures for revocation of less restrictive alternative treatment shall be the same as those set forth in this section for conditional release."

Where, as here, a trial court has weighed the evidence, our review is limited to determining whether substantial evidence supports the findings, and if so, whether the findings support the court's conclusions of law and judgment. In re Det. of A.S., 91 Wn. 146, 162, 955 P.2d 836 (1998), aff'd, 138 Wn.2d 898, 982 P.2d 1156 (1999). "Substantial evidence is 'evidence in sufficient quantum to persuade a fair-minded person of the truth of the declared premise.'" Id. (quoting Holland v. Boeing Co., 90 Wn.2d 384, 390, 583 P.2d 621 (1978)).

Without citation to relevant authority, S.C. contends that a finding of substantial deterioration of functioning requires direct evidence establishing her level of functioning on the day of her conditional release, April 1, to serve as a baseline for comparison. She also claims that the evidence presented at the hearing as to deterioration did not qualify as substantial.

Contrary to S.C.'s claim, nothing in RCW 71.05.340 requires direct evidence establishing a definite baseline level of functioning as of the entry of a

conditional release order before a court can find a substantial deterioration of functioning at a hearing to revoke that order. And, we conclude the trial court's finding that S.C. had experienced a substantial deterioration in functioning is supported by substantial evidence.

Dr. Eisenhauer described S.C.'s functioning as of just two weeks before her conditional release. And, Riley described her behavior just prior to the revocation hearing. Both Riley and Dr. Spence testified that they based their professional opinion that S.C. had experienced a substantial deterioration in functioning in part on their review of her treatment records, which included professional descriptions of her level of functioning at various times over the past year of her commitment proceedings. Although the records upon which the experts relied were not admitted as evidence, S.C. fails to identify any authority prohibiting the trial court from considering the experts' opinions when making a determination as to a substantial deterioration in functioning under RCW 71.05.340(3)(d). In fact, in its oral ruling, the trial court indicated that Dr. Spence's opinion was particularly convincing because it was "based on things that seem logical, especially . . . in terms of [S.C.'s] ability to work with staff" prior to her conditional release as opposed to her inability to meaningfully communicate with staff at the time of the revocation hearing.

We conclude that the expert opinions and the testimony demonstrating a change in S.C.'s ability to communicate before and after her conditional release constitute evidence of a sufficient quantum to persuade a fair-minded person that

S.C. had experienced a substantial deterioration in functioning. S.C. fails to demonstrate error.

Affirmed.

WE CONCUR: