# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Detention of L.B.,<br><br>A Minor Child.<br><br>STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>L.B.,<br><br>Appellant. | No. 75326-6-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br><br><br>FILED: July 31, 2017 |

LEACH, J. — L.B. appeals a trial court's 14-day involuntary commitment order. Because sufficient evidence supports the trial court's finding that as a result of her mental disorder, L.B. posed a substantial risk of harm to self, we affirm.

## Background

On May 8, 2016, 16-year-old L.B. wandered from her home while her mother thought she was sleeping. After police found L.B. trying to get into vehicles, including a police patrol car, they sent her to the emergency room (ER). In the ER, a mental health professional observed that L.B. was experiencing hallucinations and insomnia, was disoriented, and was unable to have any meaningful

conversation. Relying on those symptoms, the health care professional decided that L.B. required involuntary psychiatric hospitalization.

L.B. was initially detained at a hospital for a 72-hour period. On May 11, the State filed a petition to commit L.B. for 14 additional days of involuntary treatment. The State alleged that L.B. presented a likelihood of serious harm to self, a likelihood of serious harm to others, and was gravely disabled.[1] On May 12, the court held an evidentiary hearing on the petition.

The court first heard from Emily Brown, a mental health and substance use therapist. She interviewed L.B. in the ER at Valley Medical Center. During the interview, L.B. was restrained on a bed in two-point restraints in a room that was otherwise empty. Brown testified that when she first tried to talk with L.B., she was a bit guarded and agitated. L.B. appeared to be speaking to herself or to someone else. L.B.'s eyes would dart around the room, and she would mumble responses to Brown's questions. Brown asked L.B. to whom she was talking. L.B. responded that her father was in the room and he told her not to talk to Brown. L.B. also stated that "my people" were in the room. Brown testified that no other people were in the room.

---

[1] The State proceeded under "prong a" of grave disability, which states that a minor is gravely disabled when she, "as a result of a mental disorder, is in danger of serious physical harm resulting from a failure to provide for . . . her essential human needs of health or safety." RCW 71.34.020(8); In re Det. of LaBelle, 107 Wn.2d 196, 204-05, 728 P.2d 138 (1986).

L.B. told Brown she was not suicidal but was unable to discuss a safety plan. That, together with L.B.'s auditory and visual hallucinations, led Brown to recommend involuntary commitment.

Next, the court heard testimony from Dr. Richard Thomas, a licensed clinical psychologist employed at Valley Medical Center who interacted with and evaluated L.B. Dr. Thomas asked L.B. if she had a mental disorder, and L.B. stated, "All of the above; depression, ADHD [attention deficit hyperactivity disorder], concentration and trauma." When he asked if she was suicidal, she said, "Sometimes." When he asked her when she was last suicidal, she said, "Today. Strangle myself right here." She then pulled on her wrist restraints and put them up to her face. When Dr. Thomas asked how she would kill herself, L.B. stated, "Keep it for how long you want ready for my arm." When asked why, she said, "Feels like somebody is coming inside me like I am pregnant and a lot of stuff happened to me before." L.B. then asked Dr. Thomas if she were alive.

L.B. stated she heard voices and saw "spirits" that other people might not see or hear. When Dr. Thomas asked about past suicide attempts, L.B. stated, "Yes. I have been dead since I was five." He asked her how she tried to hurt herself in the past, and she stated, "My dad got arrested."

To assist in forming his opinions, Dr. Thomas also reviewed L.B.'s medical records and spoke with nursing staff. Dr. Thomas testified that in his opinion, L.B. suffered from a mental disorder with diagnoses of psychosis not otherwise specified, polysubstance induced psychosis, and rule out substance induced

psychosis.[2] He also opined that L.B. presented a substantial risk of physical harm to herself as a result of a medical disorder. He based his opinion on L.B.'s statements that she sometimes felt suicidal, her statements about strangling herself, and her gesture with the restraints. Dr. Thomas recommended two weeks' inpatient psychiatric care in a facility specializing in treatment of adolescents.

The court found that the State had proved by a preponderance of the evidence that L.B. had a mental disorder and posed a risk of harm to herself.[3] It declined to find, however, that she posed a serious risk of harm to others or that she was gravely disabled. The court also found that no less restrictive alternative was available and granted the 14-day commitment order.

L.B. appeals.[4]

## Analysis

L.B. challenges the sufficiency of the evidence to support the trial court's commitment order. We review a trial court's decision to order involuntary

---

[2] Dr. Thomas explained that a diagnosis of "rule out substance induced psychosis" means that it is possible the substance is inducing the psychotic episode.

[3] "'Mental disorder' means any organic, mental, or emotional impairment that has substantial adverse effects on an individual's cognitive or volitional functions." RCW 71.34.020(13).

[4] Although the commitment order has already expired, the State does not dispute L.B.'s assertion that this appeal is not moot. Indeed, mootness is not at issue because involuntary commitment orders have consequences for future commitment determinations. In re Det. of M.K., 168 Wn. App. 621, 626, 279 P.3d 897 (2012) ("In the case of civil commitments under chapter 71.05 RCW, the trial court is directed to consider, in part, a history of recent prior civil commitments; thus, each order of commitment entered up to three years before the current commitment hearing becomes a part of the evidence against a person seeking denial of a petition for commitment." (citing RCW 71.05.012)).

commitment for psychological treatment to see if substantial evidence supports the court's findings and whether its findings support its legal conclusions.[5] Evidence is substantial if it is sufficient to persuade a fair-minded person of the finding's truth.[6]

The State may not involuntarily commit a person for the treatment of a mental disorder without due process of law.[7] "For a fourteen-day commitment, the court must find by a preponderance of the evidence that . . . [t]he minor has a mental disorder and presents a 'likelihood of serious harm' or is 'gravely disabled.'"[8] To show a likelihood of serious harm, the State must prove that a minor poses a substantial risk of harm to self, others, or property of others.[9] Serious harm to self is "evidenced by threats or attempts to commit suicide or inflict physical harm on oneself."[10]

The trial court heard testimony from two mental health professionals who interacted with L.B. Each recommended involuntary commitment. The record shows that L.B. experienced both auditory and visual hallucinations. In addition, her statements and gestures about suicide show suicidal ideation. From these facts, a fair-minded person could conclude that L.B. had a mental disorder and posed a substantial risk of harming herself.

---

[5] In re Det. of A.S., 91 Wn. App. 146, 162-63, 955 P.2d 836 (1998).
[6] A.S., 91 Wn. App. at 162 (quoting Holland v. Boeing Co., 90 Wn.2d 384, 390-91, 583 P.2d 621 (1978)).
[7] LaBelle, 107 Wn.2d at 201.
[8] RCW 71.34.740(10).
[9] RCW 71.34.020(11) (defining "likelihood of serious harm").
[10] RCW 71.34.020(11).

L.B. asserts that the State failed to show that she presented a likelihood of serious self-harm because L.B. could not have harmed herself while restrained. But that argument misses the point. The question is not whether L.B. was likely to harm herself while restrained or under professional supervision. Rather, the trial court had to decide whether she was likely to harm herself if released from custody without treatment.

L.B. also asserts that the court's findings do not support its conclusion that she should be committed. But she fails to explain this assertion. The trial court made findings about every element required to support an involuntary treatment order. Substantial evidence supports those findings which in turn support the trial court's legal conclusions and decision.

### Conclusion

We have reviewed the record and concluded that it contains sufficient evidence to allow a reasonable fact finder to find that L.B. had a mental disorder and presented a likelihood of serious harm. We affirm.

_Leach, J._

WE CONCUR:

_Mann, J._ _Appelwick, J._

2017 JUL 31 9:28

COURT OF APPEALS DIV 1
STATE OF WASHINGTON
FILED