# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

In the Matter of the Commitment of )  No. 75112-3-I
)
)
)
)
)
)
T.A., )  UNPUBLISHED OPINION
)
Appellant. )  FILED: January 16, 2018
)

VERELLEN, C.J. — T.A. challenges the trial court's 14-day involuntary commitment order, contending substantial evidence does not support the court's finding that he suffered from a mental disorder. But the State presented evidence of T.A.'s various diagnoses and evidence that these impairments had substantial adverse effects on his cognitive or volitional functions.

T.A. also challenges the court's finding that as a result of a mental disorder, he presented a likelihood of serious harm to himself and others. But the State presented evidence that T.A. attempted to physically harm himself, inflicted physical harm on a staff member, and caused another staff member to be reasonably fearful of physical harm. We conclude substantial evidence supports the trial court's findings, and those findings in turn support its conclusion.

Therefore, we affirm.

## FACTS

On March 16, 2016, a designated mental health professional petitioned for T.A.'s initial detention, and he was detained at Fairfax Hospital for evaluation and treatment. On March 21, 2016, Fairfax Hospital filed a 14-day involuntary treatment petition alleging that T.A., as a result of a mental disorder, presented a likelihood of serious harm to himself and others.[1]

The sole witness at the hearing was Dr. Angel Lugo Steidel, a licensed clinical psychologist. Dr. Lugo Steidel evaluated T.A. several days before the hearing, but T.A. did not participate in the evaluation. He reviewed T.A.'s medical charts and spoke with treatment staff.

After hearing the doctor's testimony, the trial court granted the commitment petition, finding T.A., as a result of a mental disorder, presented a likelihood of serious harm to himself and others.

T.A. appeals.

## ANALYSIS

The sole issue on appeal is whether the State presented substantial evidence to support the trial court's findings.[2]

---

[1] The petition was amended at the start of the hearing to include likelihood of serious harm to others.

[2] Although T.A.'s commitment ended over a year ago, T.A. contends his appeal is not moot because he remains burdened by the findings and conclusions entered. See In re Det. of M.K., 168 Wn. App. 621, 625-30, 279 P.3d 897 (2012) ("an involuntary commitment order may have adverse consequences on future involuntary commitment determinations"). The State does not challenge the issue of mootness. Under the circumstances, we exercise our discretion to decide the appeal on the merits.

Our review is limited to determining whether substantial evidence supports the trial court's findings of fact and if those findings in turn support the court's conclusion.[3] "Substantial evidence is evidence in sufficient quantum to persuade a fair-minded person of the truth of the declared premise."[4]

Individuals may be involuntarily committed for up to 14 days "[i]f the court finds by a preponderance of the evidence that such person, as the result of mental disorder, presents a likelihood of serious harm, or is gravely disabled."[5]

T.A. argues that the State did not prove he suffers from a mental disorder.

"RCW 71.05.020(29) defines 'mental disorder' broadly, as 'any organic, mental, or emotional impairment which has a substantial adverse effects on an individual's cognitive or volitional functions.'"[6] We may consider evidence of recent past mental history to determine present and immediate future mental behavior.[7]

Here, the court permitted Dr. Lugo Steidel to read portions of T.A.'s medical charts. This testimony revealed the various diagnoses for T.A., including posttraumatic stress disorder, adjustment disorder with anxiety, depression, and cluster B personality traits, and bipolar disorder. The court acknowledged Dr. Lugo Steidel's testimony "reflects a struggle by the hospital to place a particular

---

[3] In re Det. of LaBelle, 107 Wn.2d 196, 209, 728 P.2d 138 (1986).

[4] Holland v. Boeing Co., 90 Wn.2d 384, 390-91, 583 P.2d 621 (1978).

[5] RCW 71.05.240(3)(a).

[6] In re Det. of R.S., 124 Wn.2d 766, 771, 881 P.2d 972 (1994).

[7] In re Det. of Meistrell, 47 Wn. App. 100, 107-08, 733 P.2d 1004 (1987).

precise (inaudible) diagnosis."[8] But evidence of multiple varying diagnoses does not prevent the State from proving T.A. suffered from a disorder.

Dr. Lugo Steidel also testified concerning his personal observation of T.A. that "he is currently labile . . . very agitated (inaudible) inability to control. He's also reporting nightmares that are consistent with posttraumatic stress disorder."[9] Taken together, this testimony is evidence of a "mental . . . impairment which has substantial adverse effects on [T.A.'s] cognitive or volitional functions."[10] This evidence was sufficient to show T.A. suffered from a mental disorder.

T.A. contends his symptoms were consistent with benzodiazepine or tobacco withdrawal rather than the diagnosed impairments. But Dr. Lugo Steidel testified that the behavior he observed went past the "irritability, anxiety, [and] anger" associated with withdrawal.[11] The court found this testimony credible. We do not review credibility determinations.[12]

T.A. also argues that even if the State proved he has a mental disorder, it failed to present substantial evidence that he posed a likelihood of serious harm to himself or others as a result of that mental disorder.

---

[8] Report of Proceedings (RP) (Mar. 23, 2016) at 18.

[9] Id. at 8.

[10] See RCW 71.05.020(29).

[11] RP (Mar. 23, 2016) at 66.

[12] State v. Homan, 181 Wn.2d 102, 106, 330 P.3d 182 (2014) ("[W]e must defer to the trier of fact for purposes of resolving conflicting testimony and evaluating the persuasiveness of the evidence.").

"Likelihood of serious harm to oneself" is defined as "[a] substantial risk that . . . [p]hysical harm will be inflicted by a person upon his or her own person, as evidenced by threats or attempts to commit suicide or inflict physical harm on oneself."[13] "Likelihood of serious harm to others" is defined as "[a] substantial risk that . . . physical harm will be inflicted by a person upon another, as evidenced by behavior which has caused such harm or which places another person or persons in reasonable fear of sustaining such harm."[14] A showing of a substantial risk of physical harm requires evidence of a recent over act "which has caused harm or creates a reasonable apprehension of dangerousness."[15]

Dr. Lugo Steidel testified that T.A. arrived at Fairfax Hospital on March 18, 2016 with a lacerated wrist and told hospital staff "I did this."[16] And on March 21, 2016, T.A. had to be restrained after he repeatedly kicked and hit his head against a wall. This testimony is evidence of T.A.'s "attempts to commit suicide or inflict physical harm on [himself]."[17] This evidence was sufficient to show T.A. posed a substantial risk of harm to himself.

Dr. Lugo Steidel also testified that on March 21, 2016, T.A. pushed staff members on two separate occasions. And on March 22, 2016, T.A. came very close to Dr. Lugo Steidel, stared menacingly at him, and told him "I am going to

---

[13] RCW 71.05.020(27)(a)(i).

[14] RCW 71.05.020(27)(a)(ii).

[15] In re Det. of Harris, 98 Wn.2d 276, 284-85, 654 P.2d 109 (1982).

[16] RP (Mar. 23, 2016) at 16.

[17] See RCW 71.05.020(27)(a)(i).

tear your face off."[18] Dr. Lugo Steidel testified that this incident caused him to be fearful for his personal safety. These two incidents are evidence of T.A.'s "behavior which has caused [physical] harm" to another and "which places another person . . . in reasonable fear of sustaining [physical] harm."[19] This evidence was sufficient to show T.A. posed a substantial risk of harm to others.

We affirm the involuntary commitment order.

WE CONCUR:

_____

_____
Leach, J.

_____
Becker, J.

---

[18] RP (Mar. 23, 2016) at 30.
[19] See RCW 71.05.020(27)(a)(ii).

6