[No. 34630-3-II.    Division Two.    October 30, 2007.]

JESSE MAGANA, *Respondent*, v. HYUNDAI MOTOR AMERICA ET AL., *Appellants*.

*Heather K. Cavanaugh* (of *Miller Nash, LLP*) and *Michael B. King* (of *Talmadge Law Group, PLLC*), for appellants.

*Douglas F. Foley* (of *Foley & Buxman, PLLC*); *Paul W. Whelan* (of *Stritmatter Kessler Whelan Coluccio*); *Peter O'Neil*; *Derek J. Vanderwood*; *Alisa R. Brodkowitz* (of *Brodkowitz Law*); *Charles K. Wiggins* and *Kenneth W. Masters* (of *Wiggins & Masters, PLLC*); and *Michael E. Withey* (of *Law Offices of Michael Withey*), for respondent.

¶1 VAN DEREN, A.C.J. — Hyundai Motor Company and Hyundai Motor America (collectively Hyundai) appeal the trial court's default order of liability on Jesse Magana's personal injury claim due to Hyundai's willful discovery violations. It argues that the trial court erred (1) in finding that it willfully violated discovery orders, (2) by failing to consider lesser sanctions, and (3) by not requiring evidence of prejudice warranting the default sanction. It also challenges the trial court's award of interest from the date of the jury verdict on the underlying and unchallenged damages award. Finding no prejudice to Magana's ability to retry his case resulting from Hyundai's discovery violations, we reverse the default order and remand for trial; but we affirm the trial court's ruling that interest on damages runs from date of the verdict in the first trial if liability is found following retrial.

## FACTS

### I. BACKGROUND[1]

¶2 "On February 15, 1997, Ricky Smith was driving a rented 1996 Hyundai Accent two-door hatchback." *Magana v. Hyundai Motor Am.*, 123 Wn. App. 306, 309, 94 P.3d 987 (2004). Angela Smith and Magana were passengers. *Magana*, 123 Wn. App. at 309. To avoid an apparent collision with an oncoming truck, Ricky Smith jerked the steering wheel, causing the car to "yaw" and leave the road. *Magana*, 123 Wn. App. at 309.

¶3 The car hit at least two trees, and the resulting centrifugal force caused it to spin violently. The force threw

---

[1] We take these facts from our prior opinion, *Magana v. Hyundai Motor America*, 123 Wn. App. 306, 94 P.3d 987 (2004).

Magana out of the car's rear window, 50 to 100 feet away from where the car finally stopped. "Magana's resulting injuries left him a paraplegic; Ricky Smith suffered a concussion, and Angela Smith broke her leg, collarbone, and shoulder blade." *Magana*, 123 Wn. App. at 309.

¶4 On February 8, 2000, Magana sued Hyundai, the Smiths, and the truck driver and his wife. Clerk's Papers (CP) at 4-5. Magana alleged that the car in which he was riding contained a " 'defective design [that] was a proximate cause of [his] injuries and damages and that Ricky Smith's and Nylander's[2] negligent driving proximately caused the car accident.' " *Magana*, 123 Wn. App. at 309 (alterations in original) (quoting CP at 4).

II. DISCOVERY—2000 TO 2001

¶5 Before the first trial in this case, Magana served a request for production on Hyundai that sought: "copies of any and all documents including but not limited to complaints, answers, police reports, photographs, depositions or other documents relating to complaints, notices, claims, lawsuits or incidents of alleged seat back failure on Hyundai products for the years 1980 to present." CP at 2379. Hyundai responded in April 2000 that "there have been no personal injury or fatality lawsuits or claims in connection with or involving the seat or seat back of the Hyundai Accent model years 1995 to 1999."[3] CP at 2379.

¶6 But at the time Hyundai responded, there were at least three claims involving seat failure in 1995-1999 Accents.[4] Exs. 5, 6, 30. Between the initial response and the first trial, Hyundai received four other claims involving

---

[2] Nylander was the driver of the truck involved in the accident.

[3] In response to an identical request, Hyundai responded that there were no claims "that due to the allegedly defective design of the front passenger seat and airbag system in the 1995-1999 model year Hyundai Accent, the airbag allegedly knocked a person back collapsing the front passenger seat." CP at 2385.

[4] One of the incidents purportedly involved an Accent, but a review of the vehicle identification number revealed that it was a different model Hyundai vehicle. Ex. 3, at 6-7.

seat failure in 1995-1999 Accents. Exs. 36-39.[5] But Hyundai never supplemented its initial response to Magana's request for production. CP at 5317.

¶7 Magana also served an interrogatory requesting that Hyundai identify all Hyundai vehicles using the same or a substantially similar front passenger seat as the 1996 Accent. CP at 2376, 2383. Hyundai responded that the 1995-1999 Accents used the same front passenger seat and no other Hyundai vehicle used the same or a substantially similar right front seat. CP at 2376, 2383.

¶8 Throughout discovery, Hyundai refused to answer Magana's requests as written, providing responses that reworded and limited the scope of the original request. CP at 2312, 2379, 2384-85. But at no time did Hyundai seek a protective order narrowing the scope of discovery, nor did Magana move to compel answers from Hyundai before the first trial.

III. First Trial

¶9 On June 3, 2002, trial commenced. CP at 315-16. Magana did not attempt to introduce any evidence of the 21 other similar incidents of aggressive or violent deployment of the passenger side airbag that Hyundai produced during discovery. Br. of Appellant at 22. Instead, "Magana's primary trial theory was that if the seat back had been more rigid, it would not have given way when subjected to the centrifugal forces that caused the car to go into a spin." *Magana*, 123 Wn. App. at 318.

¶10 But Magana's counsel also explored an alternative theory of liability—"the lack of an integrated seat belt design"—with one of his expert witnesses. *Magana*, 123 Wn. App. at 311-12. The trial court initially overruled Hyundai's objection to this line of questioning. *Magana*, 123 Wn. App. at 312. "Four days later, the trial court reconsidered its decision and ruled that it should have sustained

---

[5] Hyundai also received a fifth incident in July 2002, after the first trial ended. Ex. 40.

Hyundai's objection to [the expert witness's] testimony about 'an alternative seat design' of an integrated seat belt." *Magana*, 123 Wn. App. at 312 (quoting 11 Report of Proceedings (RP) at 1666). The trial court did not inform the jury that the expert's testimony on this issue was not to be considered during deliberations. "In an apparent compromise effort, the court reaffirmed its ruling striking [the expert witness's] challenged testimony but declined to advise the jury of its actions because of concerns that an instruction [after the parties had rested] would highlight the evidence." *Magana*, 123 Wn. App. at 313.

¶11 "By a 10 to 2 vote, the jury returned a verdict in favor of Magana for over eight million dollars, attributing 60 percent of the fault to Hyundai and 40 percent to Ricky Smith." *Magana*, 123 Wn. App. at 313. And the jury also answered "Yes" to the following special verdict form question: " 'Did Defendant Hyundai supply a product that was not reasonably safe as designed?' " *Magana*, 123 Wn. App. at 313 (quoting CP at 552).

IV. First Appeal

¶12 Hyundai appealed the trial court's decision not to instruct the jury about the expert's stricken testimony. *Magana*, 123 Wn. App. at 313.[6] We reversed, explaining:

> Ten jurors concluded that the vehicle was unreasonably unsafe; two jurors disagreed. We have no way of conclusively determining how many of the 10 relied on Magana's defective seat back theory and how many relied on [the expert's] broad and conclusory testimony that an integrated seat belt would have prevented Magana's ejection through the rear window. . . . Because one vote would have changed the outcome, the error in failing to advise the jury that the court had stricken [the expert's] seat belt evidence was neither trivial, formal, nor academic.

---

[6] Hyundai did not assign error to the damages award and did not seriously challenge the evidence supporting damages at trial or on appeal. *Magana*, 123 Wn. App. at 319.

*Magana*, 123 Wn. App. at 319. We remanded "for retrial [of] liability issues regarding the occupant restraint system." *Magana*, 123 Wn. App. at 319.[7] The mandate issued on April 4, 2005. CP at 748. The trial court set the case for a second trial on January 17, 2006.

V. 2005 DISCOVERY ISSUES FOLLOWING REMAND

¶13 On September 13, 2005, Magana's counsel wrote Hyundai "with regard to discovery requests that need to be updated." CP at 4032. He asked Hyundai to update its interrogatory response because it

> seeks identification of Hyundai vehicles that use the same or substantially similar seat as the 1996 Hyundai. The response is that no other vehicles use a seat that is substantially similar. We have a recliner mechanism from another Hyundai vehicle that looks identical. It appears therefore that [Hyundai]'s response was not accurate. Please check and update as necessary.

CP at 4032.

¶14 He also asked that Hyundai update its response to the request for production that

> seeks documents relating to incidents of alleged seat back failure on Hyundai products. The response that I have is now more than 5 years old. Moreover, it is limited to the 1995-1996 Accent. For purposes of discovery, it should not be so limited, especially since it is clear that other Hyundai vehicles used the same recliner mechanism. Please check and update or amend the response as necessary.

CP at 4032.

¶15 Counsel for both parties then exchanged a series of letters discussing the scope of Magana's requests. Hyundai agreed to provide information relating to alleged seat back failure in 1995-1999 Accents and 1992-1995 Elantras; however, Magana continued to request all seat back failure

---

[7] In an unpublished portion of the opinion, we affirmed the judgment against Ricky Smith.

claims in Hyundai products for the year 1980 to present. CP at 4045-51.

¶16 On October 25, 2005, Hyundai supplemented its response to Magana's interrogatory by stating:

> The 1995-1999 model year Hyundai Accents used the same or substantially similar right front seat as the 1996 Hyundai Accent. No other Hyundai model automobile uses the same or substantially similar design for the right front seat as the 1996 Hyundai Accent. Although not specifically requested by this interrogatory, [Hyundai] further responds that the 1992-1995 model year Hyundai Elantras had a recliner on the right front seat that was substantially similar to the right front recliner on the 1996 Hyundai Accent.

CP at 4067. Hyundai also supplemented its response to Magana's request for production:

> [Hyundai] objects to [the request for production] on the grounds it is overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving said objections, [Hyundai] will produce complaints and claims alleging a seat back failure with respect to the 1995-1999 model year Hyundai Accents and with respect to the 1992-1995 model year Hyundai Elantras.

CP at 4063.

¶17 Hyundai then produced two documents relating to claims of alleged seat back failure: (1) a 2002 complaint, filed in California, in which plaintiffs claimed that they were injured in part by an allegedly defective 1999 Hyundai Accent front passenger seat and (2) a 2000 notice of claim letter, in which an attorney notified Hyundai that his client, a rear seat passenger in a 1995 Hyundai Elantra, was injured by an allegedly defective driver's seat. CP at 4054, 4057-60. Hyundai stated that other than Magana's claim, "these are the only seat-back failure claims relating to either the 1995-1999 Hyundai Accent or the 1992-1995 Hyundai Elantra." CP at 4053.

¶18 On October 27, 2005, Magana filed a motion to compel Hyundai "to produce documents relating to other

incidents of injury caused by seatback failures as requested by plaintiff in Requests for Production served in the fall of 2000." CP at 787. As per the original request, Magana sought "copies of any and all documents, including but not limited to complaints, answers, police reports, photographs, depositions or other documents relating to complaints, notices, claims, lawsuits or incidents of alleged seat back failure on Hyundai products for the years 1980 to present." CP at 789 (boldface omitted). Hyundai opposed the motion, arguing that Magana's request was unduly burdensome and not reasonably calculated to lead to discovery of admissible evidence. CP at 909. On November 18, 2005, the trial court ordered Hyundai to produce "[p]olice [r]eports, [l]egal [c]laims, [c]onsumer [c]omplaints and [e]xpert [r]eports or [d]epositions and [e]xhibits and [p]hotographs thereto with respect to all consumer complaints and lawsuits involving allegations of seatback failure on all Hyundai vehicles with single recliner mechanisms regardless of incident date and regardless of model year." CP at 961-62.

¶19 On November 21, 2005, in compliance with the trial court's order, Hyundai produced numerous documents relating to legal claims and consumer complaints of seat failure. CP at 1027, 2353-54; Ex. 48, at unnumbered pp. 3-4. On December 1, 2005, Hyundai produced additional boxes of police reports, photographs, expert records, deposition transcripts, and the first set of records generated from a search of its consumer "hotline" database. CP at 1027. These documents included nine reports of seat failure involving 1995-1999 Accents. Exs. 5, 6, 9, 30, 36-40.

¶20 Thereafter, Magana complained, "With less than a month before trial it will be virtually impossible to effectively put together a proper case utilizing the other similar incidents material just produced by Hyundai." CP at 2350. Magana's experts stated that it would be "difficult, if not impossible," to prepare and use this material for the second trial on January 17, 2006. CP at 2666, 2670.

¶21 Instead of requesting a continuance, Magana moved for a default judgment against Hyundai on December 23,

2005.[8] CP at 2307-46. Magana claimed that Hyundai had (1) failed to comply with his request for production, (2) falsely answered his interrogatory, (3) willfully spoiled evidence of other similar incidents, and (4) failed to produce documents relating to rear impact crash tests. CP at 2309-10.

¶22 Magana's counsel also declared that if Hyundai had produced these documents before the first trial, he would have (1) investigated the other similar incidents, (2) provided documents of these other similar incidents to his experts, and (3) conferred with his experts regarding the most important other similar incidents. CP at 2354. Furthermore, Magana's experts stated that these other similar incidents would have been "invaluable" and "useful" during the first trial. CP at 2665, 2669. Regarding prejudice to the upcoming trial, Magana argued that Hyundai's late production "put[ ] an enormous and unfair burden on [him] during the last stages of trial preparation." CP at 2331.

¶23 On January 4, 2006, Magana requested an evidentiary hearing on his motion for sanctions. CP at 3171. Magana also filed a motion to amend his complaint to add a "failure to warn" allegation. CP at 4293. On January 6, Hyundai produced the last of the documents. Also on January 6, Hyundai responded that (1) the parties agreed in a July 2001 letter to relieve Hyundai of the obligation to produce any other similar incidents relating to seat back failure, (2) any conclusion about whether Magana would be prejudiced by its alleged failure to produce documents was "speculative and premature," and (3) Hyundai had truthfully answered the interrogatory. CP at 3214-15, 3246, 3251, 3267. In addition, Hyundai acknowledged that, because of mistakes, it failed to disclose documents relating to

---

[8] Magana objected to a continuance because he "ha[d] waited long enough for justice in this case, and [a continuance] would reward the Hyundai defendants for [Hyundiai's] discovery abuse. . . . Moreover, a continuance burdens the other litigants and clogs the court's trial calendar." CP at 2343-44.

an earlier lawsuit (the *Acevedo* claim)[9] and documents relating to a sled test. CP at 3301-02, 3303-05, 3245.

¶24 In granting Magana's request for an evidentiary hearing, the trial court stated:

> I do wish to comment that the Court will be focusing on the prejudice to Plaintiffs in this point in time with respect to the retrial of this case following remand by the Court of Appeals. The Court does not find it to be a very useful effort to go into what would amount to be speculation about the first trial or about the outcome of appeal of the case. Although what happened prior to the first trial is part of the overall evidence, when considering a request for sanction, the Court needs to consider the remedies available at this time, and the totality of the circumstances facing the Court.
>
> In other words, the Court will be focusing primarily on whether or not the—there has been prejudice to the Plaintiff in preparing for retrial, since the remand in the spring to summer of 2005.

RP (Jan. 13, 2006) at 73. The court also denied Hyundai's request for a continuance of the trial date after Magana withdrew his motion to amend the complaint. RP (Jan. 13, 2006) at 62, 70.

¶25 Following the evidentiary hearing, the trial court found that (1) Hyundai's claim that Magana agreed to forgo discovery of other seatback failure incidents was not persuasive, (2) Hyundai falsely responded to the interrogatories and requests for production, and (3) Magana was severely prejudiced in preparing for a second trial. CP at 5316, 5322-23, 5331. As a sanction, the trial court granted Magana's request for a default judgment against Hyundai. RP (Jan. 20, 2006) at 32.

¶26 Hyundai appeals, urging us to vacate the default judgment and remand for a new trial before a different judge or, in the alternative, to remand for a sanctions

---

[9] *Acevedo v. Hyundai,* No. ATL-L-2276-01 (Atlantic County Super. Ct., N.J. Nov. 25, 2002). According to Hyundai's counsel, *Acevedo* "was a lawsuit filed in Superior Court of New Jersey arising from a high speed head-on collision involving a 1994 Hyundai Scoupe." CP at 3303.

hearing before a new judge with directions that a default judgment may not be entered on the basis of this record. Br. of Appellant at 100.

## ANALYSIS

I. STANDARD OF REVIEW

¶27 Washington's discovery rules give trial courts broad discretion to sanction parties for discovery violations. *Burnet v. Spokane Ambulance*, 131 Wn.2d 484, 494, 933 P.2d 1036 (1997); *Snedigar v. Hoddersen*, 114 Wn.2d 153, 169, 786 P.2d 781 (1990); *Smith v. Behr Process Corp.*, 113 Wn. App. 306, 324, 54 P.3d 665 (2002). We review the trial court's sanctions under an abuse of discretion standard that (1) gives the trial court wide latitude in determining appropriate sanctions, (2) reduces trial court reluctance to impose sanctions, and (3) recognizes that the trial court is in a better position to determine this issue. *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 339, 858 P.2d 1054 (1993). We should not disturb the use of sanctions absent a clear showing that a trial court's discretion was manifestly unreasonable or exercised on untenable grounds or for untenable reasons. *Mayer v. Sto Indus., Inc.*, 156 Wn.2d 677, 684, 132 P.3d 115 (2006); *Burnet*, 131 Wn.2d at 494. A decision is untenable if it is based on unsupported facts or an incorrect legal standard, or if no reasonable person would adopt the same view as the trial court. *Mayer*, 156 Wn.2d at 684.

¶28 Here, the trial court relied on CR 37(d) as authority for entering a default judgment against Hyundai. CP at 5335-36. CR 37(d) authorizes sanctions, including the sanctions set forth in CR 37(b)(2),[10] for failure to respond to

---

[10] In pertinent part, CR 37(b)(2) provides:

*Sanctions by Court in Which Action Is Pending.* If a party . . . fails to obey an order to provide or permit discovery, . . . the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

. . . .

interrogatories and requests for production. Under CR 37(d), courts treat an evasive or misleading answer as a failure to answer. A party objecting to the interrogatory or request is not relieved of a failure to respond unless the party has sought a protective order under CR 26(c). CR 37(d).

¶29 Because a default judgment raises due process concerns, the record must show that the trial court (1) found that a party willfully violated the discovery rules, (2) found the opposing party's ability to prepare for trial was substantially prejudiced, and (3) explicitly considered whether a lesser sanction probably would have sufficed. *Burnet*, 131 Wn.2d at 494; *Snedigar*, 114 Wn.2d at 169-70; *Behr*, 113 Wn. App. at 324-25.

## II. WILLFULNESS

¶30 Hyundai argues that the trial court erred in finding that it willfully violated the discovery rules. Br. of Appellant at 56. Specifically, Hyundai claims that the trial court erred when it found that (1) the parties did not agree to relieve Hyundai of the obligation to produce any other similar incidents relating to seat back failure, (2) Hyundai's responses to the request for production were evasive and misleading, (3) Hyundai's answers to the interrogatory were evasive and misleading, (4) Hyundai's failure to produce the records of a single similar case was a discovery violation, and (5) a 2002 case against Hyundai established a " 'pattern of lack of compliance with discovery obligations.' " Br. of Appellant at 57, 60, 65, 67, 69 (quoting CP at 5319).

---

(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceedings or any part thereof, or rendering a judgment by default against the disobedient party;

. . . .

In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising him or both to pay the reasonable expenses, including attorney fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

¶31 A discovery violation is willful if it is done without reasonable excuse. *Rivers v. Wash. State Conference of Mason Contractors*, 145 Wn.2d 674, 686-87, 41 P.3d 1175 (2002); *Behr*, 113 Wn. App. at 327. Here, Hyundai's response to the request for production that there were no incidents of seat back failure involving the 1995-1999 Accent was false, as it had received three such complaints at the time of the response. CP at 2379, 2380; Exs. 5, 6, 30. Moreover, the response was evasive, as Magana had requested seat back failure incidents for all Hyundai products since 1980 and Hyundai had received several such complaints. CP at 2379, 2314-15. On these facts, it was reasonable for the trial court to conclude that Hyundai's failure to timely disclose similar incidents of seat back failure was willful.

### A. Agreement To Limit Discovery

¶32 Hyundai argues that the trial court erred in entering finding of fact 35:[11]

Based upon this Court's review of all the available evidence, the Court finds Hyundai's claim of an agreement to take the [other similar] seat back [incident] issue "off the table" is not persuasive. The Court concludes there was no such agreement.

---

[11] Hyundai also disputes findings of fact 33 and 34, which support finding of fact 35. Br. of Appellant at 58-59. Finding of fact 33 states, "Mr. Austin [(Hyundai's counsel)], in his Declaration, asserts that he responded to Mr. O'Neil's [(Magana's counsel)] April 26, 2001 letter by letter dated July 11, 2001." CP at 5322. Finding of fact 34 states,

Mr. Austin states in his declaration (paragraph 20) that it was his "understanding" that Mr. O'Neil was no longer pursuing documents relating to seatback failures in his letter. But his declaration does not state that Mr. O'Neil and he had even discussed this "understanding", let alone that Mr. O'Neil had agreed to it. Moreover, the very next paragraph (21) in his declaration states that he had memorialized his "understanding" reached with Mr. O'Neil in his letter of July 11, 2001. This letter did not memorialize any such understanding; it is silent on whether any agreement or understanding (that Mr. O'Neil was no longer seeking documents related to seat back failures) was ever reached. Furthermore, Mr. O'Neil, in his declaration, flatly denied having reached any such agreement or understanding to [forgo] discovery of seatback [failure incidents].

CP at 5322. We do not address these findings separately because they are subsumed by finding of fact 35.

> Taking into account the false premises created by the defendants' initial discovery responses, the Court finds there was no abandonment by Plaintiff of the pursuit of discovery with respect to seat back failures at any time. The fact the plaintiff focused on certain discovery issues does not indicate in an affirmative manner that the plaintiff ever abandoned his request for obtaining evidence of other seat back failures. It would be unreasonable, and not supported by the totality of the evidence, to conclude Plaintiff abandoned the issue of seatback failure which was the central issue of the trial.

CP at 5322-23.

¶33 Hyundai argues on appeal that counsel had a series of "meet and confer" conversations between April 2001 and July 2001, resulting in an agreement to relieve Hyundai of the obligation to produce any other similar incidents relating to seat back failure. Br. of Appellant at 58-59; CP at 5322-23. Magana's counsel disputed Hyundai's characterization of the state of discovery before the 2002 trial. CP at 4791.[12] In his appellate brief, Magana argues that Hyundai did not assert the existence of an agreement to limit the scope of discovery until January 6, 2006, almost four-and-one-half years after the letter dated July 11, 2001.[13] Br. of Resp't at 17.

¶34 But it was the trial court's prerogative to decide which version of events was more credible, and we do not disturb its finding. *Hahn v. Dep't of Ret. Sys.*, 137 Wn. App. 933, 942, 155 P.3d 177 (2007). And in any event, Hyundai had already falsely responded to Magana's interrogatory before entering into the purported agreement to limit discovery. The trial court's finding that Magana did not intend to abandon discovery of seat failure incidents in light of Hyundai's false initial response is well reasoned and the record supports it.

---

[12] Magana's counsel declared that at the time he filed the motion for sanctions, he believed that Hyundai Motor America had responded truthfully to his initial request for production 20. CP at 4792.

[13] Hyundai argues that Magana's counsel never disputed the existence of this alleged agreement until "the eve of the second trial." Br. of Resp't at 59.

## B. Meaning of "Claim"

¶35 Hyundai further argues that the trial court erred in finding that its responses to the request for production were evasive and misleading in light of its dispute of the term "claim." Br. of Appellant at 60; CP at 5316-19, 5323-29. It contends it presented nonrebutted evidence that consumer hotline records[14] do not constitute "claims" and therefore it had no obligation to disclose them. Br. of Appellant at 61-62.

¶36 But Magana's request broadly encompassed

> any and all documents, including but not limited to complaints, answers, police reports, photographs, depositions or other documents relating to complaints, notices, claims, lawsuits or incidents of alleged seat back failure on Hyundai products for the years 1980 to present.

CP at 2379. If Hyundai believed the request was too broad, it was obligated to obtain a protective order limiting discovery. CR 37(d); *Fisons*, 122 Wn.2d at 354. Having failed to do so, Hyundai may not evade its responsibility to disclose the requested materials by debating the semantics of the request.

¶37 Under Hyundai's interpretation of Magana's request, we cannot conceive how Magana could have obtained the consumer hotline reports without specifically asking for them. *See Fisons*, 122 Wn.2d at 354 ("Having read the record herein, we cannot perceive of *any* request that could have been made to this drug company that would have produced the smoking gun documents."). Hyundai's response created a false impression that it was not aware of any similar incidents of seat failure in any of its products. The trial court, therefore, did not err in finding that Hyundai's response was false, evasive, and misleading.

---

[14] All three incidents involving Accents reported to Hyundai at the time it responded to Magana's request for production in April 2000 were consumer hotline reports. Exs. 5, 6, 30.

## C. Substantial Similarity of Elantra Seats

¶38 Next, Hyundai argues that the trial court erred in finding that the Elantra seat was "identical" and "substantially similar" to the Accent seat. CP at 5317;[15] Br. of Appellant at 65. Based on these findings, the trial court concluded that Hyundai's original response to Magana's interrogatory was incorrect and that Hyundai should have produced Elantra claims, as well as Accent claims, in response to the request for production. CP at 5317.

¶39 Hyundai contends that the finding is contrary to the evidence. But Magana's expert testified that seats in various Hyundai vehicles were similar in strength and design and contained nearly identical parts. CP at 785-86. The expert also stated that because the recliners were similar, incidents of seat failure involving other Hyundai models would be relevant and useful. CP at 786. Hyundai ultimately conceded that the 1992-1995 Elantra used the same recliner mechanism as the 1995-1999 Accent. CP at 4067-68. These facts are sufficient to establish substantial similarity between the seats, and the findings are not erroneous.

## D. Findings of Fact 23, 27, 28, and 29

¶40 Hyundai also challenges the trial court's findings of fact 23,[16] 27, 28, and 29.[17] But even assuming that the record does not support these findings, these

---

[15] Findings of Fact 13, 16.

[16] Finding of fact 23, as amended by the trial court on reconsideration, stated:

In *Parks v. Hyundai Motor America, Inc.*, 258 Ga.App. 876, 575 S.E.2d 673 (Ga. Court of Appeals 2002), a case in which [Hyundai's counsel] represented Hyundai at the trial court, Hyundai's response to discovery requests was at issue.

After the case was remanded by the appellate court, Hyundai produced 33 responsive [other similar incidents]. There is a similarity of circumstances of the *Parks* case and the case herein regarding production of [other similar incident] documents by Hyundai.

CP at 5902 (citations omitted).

[17] Findings of fact 27, 28, and 29 relate to Hyundai's admitted failure to reveal the *Acevedo* claim. CP at 5320-21.

findings do not affect the validity of the trial court's legal conclusions and any error related to these findings is harmless. *See Armstrong v. State*, 61 Wn.2d 116, 118 n.3, 377 P.2d 409 (1962). Because Hyundai falsely responded to Magana's request for production and failed to disclose requested materials without first obtaining a protective order, the trial court had sufficient grounds to conclude that the violation was willful regardless of its remaining findings. *See Fisons*, 122 Wn.2d at 353-54 ("The rules are clear that a party must *fully* answer all interrogatories and all requests for production. . . . If the drug company did not agree with the scope of production or did not want to respond, then it was required to move for a protective order.").

III. PREJUDICE

¶41 Hyundai further argues that the trial court erred in entering a default judgment when a fair trial was still possible. Br. of Appellant at 70. Here, the trial court's decision to impose sanctions depends on its finding that Magana suffered substantial prejudice in preparing for the second trial. CP at 5331. Because we conclude that finding is unfounded, we hold that the trial court abused its discretion in sanctioning Hyundai with a default judgment.

¶42 We begin by noting that cases should be resolved on the merits rather than by default judgment. *Little v. King*, 160 Wn.2d 696, 703, 161 P.3d 345 (2007). In any particular case, whether a default judgment is appropriate depends on whether it is a just result. *Little*, 160 Wn.2d at 703; *see also Griggs v. Averbeck Realty, Inc.*, 92 Wn.2d 576, 582, 599 P.2d 1289 (1979). "The purposes of sanctions are to deter, punish, compensate, educate, and ensure that the wrongdoer does not profit from the wrong." *Roberson v. Perez*, 123 Wn. App. 320, 337, 96 P.3d 420 (2004) (citing *Fisons*, 122 Wn.2d at 356). And the trial court should impose the least severe sanction that will adequately serve these purposes, but without undermining the purposes of discovery. *Fisons*, 122 Wn.2d at 355-56.

¶43 Hyundai argues that the trial court should have ordered a continuance so that Magana could investi-

gate the newly-disclosed incidents and determine whether a fair trial was still possible. Br. of Appellant at 74. We agree that on the record presented, there is insufficient evidence to show that the delay occasioned by Hyundai's late production substantially prejudiced Magana.

¶44 First, we note that on remand we limited retrial to the issue of liability without disturbing the jury's damages verdict. *Magana*, 123 Wn. App. at 319. Five months after our mandate issued, and only four months before the scheduled trial date, Magana requested that Hyundai update its original discovery responses. CP at 748, 4024, 4032-33. Magana also sought to amend his complaint to add additional claims against Hyundai. CP at 4293. We do not believe that Magana could have taken these actions without anticipating a trial date continuance.[18]

¶45 In his motion for sanctions, Magana emphasized his need to investigate the newly-disclosed incidents for relevance, to conduct follow-up discovery, to submit the incidents for review by his experts, and to depose the parties involved, when only one month remained until the scheduled trial date. CP at 2331-35. But Magana has not demonstrated that he could not complete his inquiry into the incidents, only that he could not do so in the month remaining until trial. This does not demonstrate prejudice to his ability to obtain a fair trial when (1) he did not request additional discovery until shortly before trial, (2)

---

[18] The dissent suggests that we "fault[ ]" Magana for failing to request discovery updates sooner. Dissent at 525. But this is correct only if we regard a default judgment of over eight million dollars as Magana's entitlement. We agree with the dissent that Hyundai had a duty to update its discovery responses and that its original responses were false, evasive, and misleading, and we do not dispute that the fault in this case lies with Hyundai. Our inquiry into prejudice, however, is limited to examining the effect Hyundai's willful violation had on Magana's ability to prepare for trial. We must, therefore, take into account Magana's trial strategy to determine whether the delayed production caused "[d]amage or detriment to [his] legal rights or claims." BLACK'S LAW DICTIONARY 1218 (8th ed. 2004) (defining "prejudice"); *see also Carlson v. Lake Chelan Cmty. Hosp.*, 116 Wn. App. 718, 740, 75 P.3d 533 (2003) ("[T]he court must consider the impact of the problem when determining whether a violation took place and designing the sanction."). This approach is consistent with the accepted rule that courts may consider the affected party's failure to mitigate in fashioning discovery sanctions. *Fisons*, 122 Wn.2d at 356.

the parties litigated the scope of permissible discovery, and (3) Hyundai timely produced documentation of other similar incidents in compliance with the court's order.[19]

¶46 Hyundai further argues that Magana cannot establish prejudice without showing that the delay in production rendered the incidents "stale." Br. of Appellant at 75. We agree.[20] The trial court found that "evidence has been lost

---

[19] The dissent relies upon *Associated Mortgage Investors v. G.P. Kent Construction Co.*, 15 Wn. App. 223, 229-30, 548 P.2d 558 (1976), to support its argument that Magana suffered prejudice. Dissent at 532. But in that case, the defendants had failed to fully respond to the plaintiff's interrogatories. *Associated Mortgage Investors*, 15 Wn. App. at 225. Accordingly, the plaintiff filed a motion to compel responses by a particular date. *Associated Mortgage Investors*, 15 Wn. App. at 225. The trial court entered an order compelling responses and further provided that if the defendants failed to comply, it would consider whether to impose a default judgment. When the defendants failed to comply with the order, the trial court entered a default judgment against them. *Associated Mortgage Investors*, 15 Wn. App. at 225-26. Thus, in that case, the trial court concluded that "an order threatening default if proper answers were not forthcoming within a week was the only sanction which would compel discovery and avert the requirement that plaintiff seek a continuance of the trial," based upon the factors cited by the dissent at page 531-32. *Associated Mortgage Investors*, 15 Wn. App. at 229.

But the rationale for entering an order threatening default to compel discovery does not apply to this case. Unlike the defendants in *Associated Mortgage Investors*, here Hyundai complied with the trial court's order to compel production. Moreover, the court in *Associated Mortgage Investors* did not apply the factors cited by the dissent in determining whether the plaintiff suffered prejudice, but only in considering whether an alternative sanction would have sufficed. 15 Wn. App. at 229. We, therefore, disagree that the factors cited by the dissent are relevant in assessing prejudice to Magana, noting that "the particular facts and circumstances of each case will determine whether the [trial court's] discretion has been abused." *Associated Mortgage Investors*, 15 Wn. App. at 229.

[20] The dissent argues, "It may very well be that timely and complete answers to Magana's interrogatories and requests for production would have made no difference. And it may very well be that effective investigation would have made no difference. But that is not for us to decide." Dissent at 532-33. We disagree, in light of the weight of authority requiring a finding of substantial prejudice before the sanction of a default judgment is permissible. *See, e.g., Burnet*, 131 Wn.2d at 494 (The trial court must find that a party's willful discovery violation substantially prejudiced the opponent's ability to prepare for trial.); *Casper v. Esteb Enters., Inc.*, 119 Wn. App. 759, 768-69, 82 P.3d 1223 (2004) (same); *Behr*, 113 Wn. App. at 325 (same). Thus, not only is it appropriate for us to consider the practical effect of Hyundai's violation, it is necessary to do so to safeguard Hyundai's constitutional right to due process. *See Behr*, 113 Wn. App. at 325 ("[A]s a default judgment for discovery violations raises due process concerns, the court must first find willfulness and substantial prejudice."). We cannot agree with the dissent that "the egregious nature of Hyundai's willful and evasive tactics in responding to Magana's discovery requests" is sufficient to sustain a default judgment. Dissent at 542.

and much of the information is stale." CP at 5331. But many of the incidents were already several years old when Magana first requested them and Magana has not shown that any information has been lost as a result of Hyundai's late production. Magana was able to contact several of the parties and attorneys involved in the incidents merely by telephoning them. Ex. 1; RP (Jan. 17, 2006) at 91. This record does not show that the delay in production has hindered Magana's ability to investigate the other similar seat failure incidents.[21]

¶47 Effectively, Magana argues that he was prejudiced because he could not proceed to trial as planned in January 2006. We agree that it is generally inappropriate to disrupt a plaintiff's trial presentation to accommodate a discovery violation. *Gammon v. Clark Equip. Co.*, 38 Wn. App. 274, 282, 686 P.2d 1102 (1984), *aff'd*, 104 Wn.2d 613, 707 P.2d 685 (1985). But in determining whether a delay is prejudicial, we must take into account the plaintiff's choice of strategy in pursuing the case.[22] Here, Magana was aware that Hyundai

---

[21] The dissent also relies on the trial court's explanation of prejudice in *Behr*. Dissent at 533-34. In *Behr*, the plaintiffs alleged that the defendant's product was defective because it caused extensive mildew damage to their homes. 113 Wn. App. at 314-15. The defendant failed to produce results of a test showing its mildewcide was not compatible with other ingredients in its product. *Behr*, 113 Wn. App. at 315-16. In that case, the withheld documents directly supported the plaintiff's allegations. Here, by contrast, the value of the withheld incidents to Magana's case is unclear. Unlike the test results in *Behr*, the other incidents of seat failure in Hyundai vehicles do not clearly establish that the seats are defective or that they caused Magana's injuries, particularly when the parties dispute where Magana was seated in the vehicle. *See Magana*, 123 Wn. App. at 310-11. Thus, we disagree with the dissent that the withheld information went "to the heart of the issue on remand." Dissent at 534. And we disagree that the failure to disclose prevented Magana from pursuing discovery into other seat failure incidents, as Magana was aware before the first trial that Hyundai had limited its responses but did not seek to compel fuller disclosure. Finally, we disagree that evidence of other claims of seat back failure "potentially bolster Magana's case while potentially undermining Hyundai's case," dissent at 534, because Hyundai has consistently argued that a more rigid seat back would be more dangerous in a rear impact collision. *Magana*, 123 Wn. App. at 318. Thus, any similar incidents of seat failure would not rebut Hyundai's expert testimony that an alternative design would be less safe overall. *Magana*, 123 Wn. App. at 318.

[22] The dissent quotes extensively from former Supreme Court Justice Philip Talmadge's dissent in *Burnet* to support the argument that we improperly substitute our judgment for that of the superior court. Dissent at 541-42. But we

had limited its responses as early as 2000, but he did not seek to expand discovery on the seat back failure issue until September 2005, four months before the second trial. It was Magana's choice to pursue additional discovery shortly before trial. Although he complains that his experts could not meaningfully evaluate the incidents in the time remaining until trial, it is unclear why he requested additional evidence if the time required to investigate would have substantially prejudiced his case.

¶48 Lastly, the trial court found that a continuance would not benefit Magana, but would benefit Hyundai. CP at 5333. We disagree. The purpose of the trial process is to uncover the truth. *State v. Thompson*, 58 Wn.2d 598, 605, 364 P.2d 527 (1961). Allowing Magana to investigate the incidents of seat failure will shed light on whether Hyundai manufactured and sold a defective product. Thus, further investigation is likely to assist in resolving the merits of Magana's case.[23]

¶49 We conclude that the record does not support the trial court's findings that the evidence was now "stale" and

---

note that former Justice Talmadge appeared on behalf of Hyundai and testified consistent with our reasoning in this case. He observed,

> [P]laintiff's counsel, as experienced as they are in these matters, had to know that when they failed to raise the issue [of supplementing Hyundai's discovery responses] in the Spring of 2005, and instead waited until the fall before addressing the matter, they were creating their own dilemma involving the pursuit of the [other similar incident] material on the one hand, and the ability to try the case as early as January of 2006.

CP at 3255.

[23] The dissent contends that granting a continuance "places the burden on Magana, . . . who must prepare again for a lengthy trial," and would reward Hyundai by allowing it time to strengthen its case for trial. Dissent at 536-37. But we believe these consequences were foreseeable when Magana sought to expand discovery on remand. Even if Hyundai had fully disclosed incidents of seat back failure before the first trial, Magana's request for supplemental responses would have yielded at least six incidents involving Accents reported since the first trial. *See* Exs. 9, 36-40. Thus, Magana would have faced the costs of investigating the new incidents and preparing for the second trial regardless of Hyundai's discovery violations and facing those costs now does not establish prejudice. Furthermore, Magana failed to file a timely motion to compel Hyundai's answers in 2000, 2001, 2002, or 2005.

that a continuance would prejudice Magana's ability to try his case—only that he would be prejudiced in presenting his case in January. If he tries to find experts and they are unable to analyze the evidence and would have been able to analyze it if it had been provided earlier, then and only then could irrevocable prejudice be shown that may warrant the trial court's usurping of the right to trial and directing a verdict in Magana's favor.

¶50 While we agree that Hyundai's discovery violations warrant sanctions,[24] on this record the trial court's finding that Magana "is severely prejudiced in going into a second trial" is unfounded. CP at 5331. Lesser sanctions here could adequately address the goal of encouraging good faith compliance with discovery requests and timely trial preparation. A default judgment is tantamount to awarding Magana a several million dollar verdict without requiring him to prove his case.[25] Absent substantial prejudice, such a sanction is contrary to law. *See Burnet*, 131 Wn.2d at 494.

¶51 Accordingly, we reverse the default judgment and remand for trial, subject to further discovery orders that allow adequate time to examine the additional information for relevance and admissibility and avoid prejudice to either party by further delay.

---

[24] The dissent points out that the choice of sanction is within the trial court's discretion and suggests that in reversing the trial court we substitute our judgment as to the appropriate sanction. Dissent at 532 n.39, 537-38. But the dissent fails to acknowledge that the choice of sanction is not without limits. A trial court lacks discretion to sanction a party by entering a default judgment unless the opposing party has been substantially prejudiced. *Behr*, 113 Wn. App. at 325. Because the trial court's finding of prejudice is unsupported by the evidence, it lacked discretion to grant Magana a default judgment.

[25] The dissent apparently faults Hyundai for failing to challenge the damages award on the first appeal, suggesting that Hyundai could not have been "concerned about a damages award for over eight million dollars." Dissent at 538 n.45. We, by contrast, find it laudable that Hyundai did not discount the seriousness of Magana's injuries by quibbling over the award. Instead, Hyundai limited its arguments on appeal to issues concerning whether it was responsible for those injuries. *See Magana*, 123 Wn. App. at 319 (improper admission of expert testimony likely affected the verdict). Certainly, we do not interpret its decision not to challenge the award as an admission that the sum was so insignificant that a monetary sanction could not have sufficiently remedied its failure to timely disclose discoverable materials.

IV. GRANT OF PREJUDGMENT INTEREST

¶52 Hyundai claims that the trial court erred in awarding Magana prejudgment interest dating back to the date of the verdict in the first trial. Br. of Appellant at 97-98. Claiming that Magana's counsel made an unreasonable argument during the first trial, Hyundai asserts that "[it] should not be penalized for successfully pursuing appellate relief from plain error invited by Magana's counsel." Br. of Appellant at 98. We disagree.

¶53 "Prejudgment interest awards are based on the principle that a defendant 'who retains money which he ought to pay to another should be charged interest upon it.'" *Hansen v. Rothaus*, 107 Wn.2d 468, 473, 730 P.2d 662 (1986) (quoting *Prier v. Refrigeration Eng'g Co.*, 74 Wn.2d 25, 34, 442 P.2d 621 (1968)); *see also Jones v. Best*, 134 Wn.2d 232, 242, 950 P.2d 1 (1998). Prejudgment interest is awardable when a claim is liquidated or readily determinable, as opposed to an unliquidated claim. *Hansen*, 107 Wn.2d at 472. And a liquidated claim is one "where the evidence furnishes data which, if believed, makes it possible to compute the amount with exactness, without reliance on opinion or discretion." *Prier*, 74 Wn.2d at 32. Finally, this court reviews a trial court's award of prejudgment interest for an abuse of discretion. *Colonial Imps. v. Carlton Nw., Inc.*, 83 Wn. App. 229, 921 P.2d 575 (1996).

¶54 Here, the trial court awarded prejudgment interest dating back to the date of the first verdict after relying on *Hadley v. Maxwell*, 120 Wn. App. 137, 84 P.3d 286 (2004). In *Hadley*, the plaintiffs sought interest on an unchallenged damages award after the appellate court remanded the case for a new trial on liability only. 120 Wn. App. at 139-40. The court concluded that "an unchallenged damages award on an unliquidated claim results in a liquidated claim for purposes of a subsequent trial on liability alone." *Hadley*, 120 Wn. App. at 144.

¶55 Here, there was no question that Magana's claim was liquidated when the jury in the first trial awarded

Magana over eight million dollars. *Magana*, 123 Wn. App. at 313. Hyundai did not assign error to or challenge the damages award. *Magana*, 123 Wn. App. at 314. The second trial was limited to liability issues. *Magana*, 123 Wn. App. at 319. And the trial court was not required to exercise its discretion in calculating the claim for purposes of the default judgment. Thus, under *Hadley*, Magana was entitled to prejudgment interest dating back to the date of the verdict in the first trial.[26] Therefore, the trial court did not abuse its discretion.

V. THE SMITHS

¶56 Next, Hyundai requests that we order the trial court to preclude the Smiths from taking part in the retrial on condition that it dismiss its cross-claim against them for contribution. Br. of Appellant at 99.

¶57 In the first appeal, we affirmed the entry of a default judgment against the Smiths on the issue of negligence. *Magana*, No. 29347-1-II, slip op. at 7-8, 31 (Wash. Ct. App. July 20, 2004) (unpublished portion); CP at 5461. Thus, the Smiths' liability is established; however, any allocation of fault with Hyundai remains to be determined.

¶58 Under RCW 4.22.070(1)(b),[27] when a plaintiff is not at fault, any defendants at fault are jointly and severally liable for the plaintiff's injuries. Tortfeasors who are jointly and severally liable may seek contribution from other defendants

---

[26] The trial court also noted:

The court does not find an equitable basis for denial of interest as argued by Hyundai. Error found by the Court of Appeals which resulted in reversal was made by the trial court, and was not the result of unreasonable argument by plaintiff's counsel. In addition, the request for equity would be outweighed by the court's finding of willful and egregious discovery violations by Hyundai.

CP at 6001.

[27] RCW 4.22.070(1)(b) provides: "If the trier of fact determines that the claimant or party suffering bodily injury or incurring property damages was not at fault, the defendants against whom judgment is entered shall be jointly and severally liable for the sum of their proportionate shares of the claimants [claimant's] total damages." (Alteration in original.)

for any amounts paid that exceed their allocation of fault. RCW 4.22.040,[28] .050.[29]

¶59 Hyundai argues that if it dismisses its cross-claim for contribution against the Smiths, "the Smiths would have no interest in the allocation of fault between them and Hyundai" because the Smiths have limited assets. Br. of Appellant at 99. But the Smiths are not parties to this appeal and we will not rule on their interest in the litigation when they have not had the opportunity to be heard. We decline to consider Hyundai's argument here but do not preclude Hyundai from raising the issue on remand.

VI. REMAND TO A NEW JUDGE

¶60 Finally, Hyundai argues that we should require a different trial court to preside on remand to avoid an appearance of bias. Br. of Appellant at 85. Litigants are entitled to a judge that is, and appears to be, impartial and they must submit proof of actual or perceived bias to support an appearance of partiality claim. *Santos v. Dean*, 96 Wn. App. 849, 857, 982 P.2d 632 (1999).

¶61 Hyundai presents several arguments supporting its claims that the trial court appeared partial. Br. of Appellant at 89-97. Magana challenges Hyundai's characterization of the trial court's statements and rulings. Br. of Resp't at 56-59. But Hyundai never sought to disqualify the trial court judge or asked her to recuse herself. We think it

---

[28] RCW 4.22.040(1) provides in relevant part: "A right of contribution exists between or among two or more persons who are jointly and severally liable upon the same indivisible claim for the same injury, death or harm, whether or not judgment has been recovered against all or any of them."

[29] RCW 4.22.050(2) provides: "If the comparative fault of the parties to the claim for contribution has not been established by the court in the original action, contribution may be enforced in a separate action, whether or not a judgment has been rendered against either the person seeking contribution or the person from whom contribution is being sought."

prudent to allow the trial court to consider Hyundai's arguments in the first instance on remand.

QUINN-BRINTNALL, J., concurs.

¶62 BRIDGEWATER, J. (dissenting) — The majority holds that the evidence does not support the trial court's finding that Jesse Magana was prejudiced by Hyundai's discovery violations in his ability to prepare for trial. Majority at 515. And therefore, the majority does not examine the appropriateness of the sanction. But I would agree not only that Hyundai's discovery violations were willful, but also that Hyundai's discovery violations were prejudicial and that the default judgment was an appropriate sanction. Because I would affirm the default judgment, I respectfully disagree with the majority.[30]

¶63 I nevertheless agree with the majority that the record must show three things: (1) the willfulness of the discovery violation; (2) the prejudice to the opposing party's ability to prepare for trial; and (3) whether a lesser sanction would have sufficed. *Burnet v. Spokane Ambulance*, 131 Wn.2d 484, 494-95, 933 P.2d 1036 (1997); *Snedigar v. Hoddersen*, 114 Wn.2d 153, 169, 786 P.2d 781 (1990); *Smith v. Behr Process Corp.*, 113 Wn. App. 306, 325, 54 P.3d 665 (2002). And I agree with the majority that we should not disturb the trial court's decision absent a clear abuse of discretion. *Mayer v. Sto Indus., Inc.*, 156 Wn.2d 677, 684, 132 P.3d 115 (2006); *Burnet*, 131 Wn.2d at 494.

¶64 But an abuse of discretion occurs only when a decision is "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *Associated Mortgage Investors v. G.P. Kent Constr. Co.*, 15 Wn. App. 223, 229, 548 P.2d 558, *review denied*, 87 Wn.2d 1006 (1976). The trial court's decision rests on "untenable grounds" or is based on "untenable reasons" if the trial court relies on

---

[30] I agree with the majority's analysis that interest on the damages in this case should run from the date of the verdict in the first trial.

unsupported facts or applies the wrong legal standard.[31] *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003). The trial court's decision is "manifestly unreasonable" if "the court, despite applying the correct legal standard to the supported facts, adopts a view 'that no reasonable person would take.'" *Rohrich*, 149 Wn.2d at 654 (quoting *State v. Lewis*, 115 Wn.2d 294, 298-99, 797 P.2d 1141 (1990)).

¶65 Here, where the trial court has weighed the evidence, our review is limited to examining whether the trial court's decision rests on tenable grounds, i.e., whether substantial evidence supports the findings of fact.[32] *Holland v. Boeing Co.*, 90 Wn.2d 384, 390, 583 P.2d 621 (1978); *see Morgan v. Prudential Ins. Co. of Am.*, 86 Wn.2d 432, 545 P.2d 1193 (1976). "Substantial evidence" is a sufficient quantity of evidence to persuade a fair-minded, rational person of the truth of the declared premise. *Holland*, 90 Wn.2d at 390-91. Finally, and most importantly, we should not substitute our judgment for that of the trial court. *Seattle-First Nat'l Bank v. Brommers*, 89 Wn.2d 190, 199, 570 P.2d 1035 (1977).

¶66 Thus, I disagree with the majority's conclusion that there is insufficient evidence to support the trial court's findings of fact that Hyundai's willful discovery violations prejudiced Magana's ability to prepare for trial.

¶67 The majority faults Magana for requesting that Hyundai update its original discovery responses five months after our mandate issued and only four months before the scheduled trial date. Majority at 516. While neither I nor the majority know why Magana took this action when he did, we do know that he took this action *only* after finding a similar-looking recliner mechanism from

---

[31] A trial court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law. *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 339, 858 P.2d 1054 (1993).

[32] And erroneous findings that do not affect the validity of the court's legal conclusions are harmless. *See Armstrong v. State*, 61 Wn.2d 116, 118 n.3, 377 P.2d 409 (1962).

another Hyundai vehicle. CP at 4032-33. In fact, Magana notified Hyundai Motor America (HMA) that

> Interrogatory No. 12 seeks identification of Hyundai vehicles that use the same or substantially similar seat as the 1996 Hyundai. The response is that no other vehicles use a seat that is substantially similar. We have a recliner mechanism from another Hyundai vehicle that looks identical. *It appears therefore that HMA's response was not accurate. Please check and update as necessary.*
>
> [Request for Production] no. 20 seeks documents relating to incidents of alleged seat back failure on Hyundai products. The response that I have is now more than 5 years old. Moreover, it is limited to the 1995-1996 Accent. For purposes of discovery, it should not be so limited, especially since it is clear that other Hyundai vehicles used the same recliner mechanism. *Please check and update or amend the response as necessary.*

CP at 4032 (emphasis added). And Magana's counsel notified Hyundai Motor Company (HMC) that

> Interrogatory No. 11 seeks identification of Hyundai vehicles that use the same or substantially similar seat as the 1996 Hyundai. The response is that no other vehicles use a seat that is substantially similar. We have a recliner mechanism from another Hyundai vehicle that looks identical. *HMC's response is not accurate. Please check.*
>
> [Request for Production] No. 20 seeks documents relating to incidents of alleged seat back failure on Hyundai products. The response that I have is now more than 5 years old. Moreover, it is limited to the 1995-1996 Accent. For purposes of discovery, it should not be so limited, especially since it is clear that other Hyundai vehicles used the same recliner mechanism. *Please check and update or amend the response as necessary.*

CP at 4033 (emphasis added).

¶68 Ultimately, in response to Magana's requests, Hyundai produced two documents relating to claims of alleged seat back failure: (1) a 2002 complaint, filed in California, in which plaintiffs claimed that they were in-

jured in part by an allegedly defective 1999 Hyundai[33] front passenger seat and (2) a 2000 notice of claim letter, in which an attorney notified Hyundai that his client, a rear seat passenger in a 1985 Hyundai Excel,[34] was injured by an allegedly defective driver's seat. CP at 4054-60. These documents are summarized as follows:

| Date[35] | Name | Model Year | Model |
|---|---|---|---|
| 09/08/2000 | Dowling | 1995 | Elantra |
| 07/24/2002 | Bobbitt | 1999 | Accent |

¶69 But clearly, Hyundai's responses and answers to Magana's discovery requests were misleading, evasive, and incomplete. After all, in response to the trial court's order, Hyundai then produced numerous other documents relating to legal claims and consumer complaints. CP at 1027, 2354; Ex. 48. These documents are summarized as follows:

| Date | Name | Model Year | Model |
|---|---|---|---|
| 12/04/1987 | Contini | 1987 | Excel |
| 04/25/1988 | Hogle | 1988 | Excel |
| 05/04/1988 | Mak | 1987 | Excel |
| 12/05/1988 | Reed | 1987 | Excel |
| 06/03/1992 | McElligatt | 1990 | Sonata |
| 08/04/1992 | Gowanny | 1986 | Excel |
| 10/27/1993 | Harris | 1987 | Excel |
| 04/23/1994 | Stewart | 1989 | Excel |
| 04/25/1994 | Zhang Ni | 1988 | Excel |
| 04/28/1994 | Guy | 1990 | Excel |
| 05/19/1994 | Vincent | 1988 | Excel |
| 10/07/1995 | Schiller | 1989 | Excel |
| 11/08/1995 | Enriquez | 1989 | Sonata |
| 11/09/1995 | Nunez | 1992 | Excel |
| 11/21/1995 | Miller | 1989 | Excel |

---

[33] Hyundai's counsel noted that this vehicle was an Accent. CP at 4053.

[34] Hyundai's counsel noted this vehicle was actually a 1995 Elantra. CP at 4053.

[35] In some unknown number of cases, these dates may refer to when the other similar incidents occurred, not when Hyundai became aware of the other similar incidents. CP at 4866-67; Ex. 48.

| Date | Name | Model Year | Model |
|---|---|---|---|
| 12/18/1995 | DeJesus | 1994 | Excel |
| 06/03/1996 | Chittick | 1994 | Excel |
| 10/31/1996 | Holcomb | 1992 | Excel |
| 12/16/1996 | Cain | 1993 | Scoupe |
| 07/10/1997 | Randall | 1993 | Sonata |
| 09/04/1997 | Salizar[36] | 1995 | Accent |
| 02/06/1998 | Martinez | 1995 | Accent |
| 03/09/1998 | McQuary | 1997 | Accent |
| 05/04/1999 | Trudeau | 1993 | Sonata |
| 04/29/2000 | Urice | 1994 | Elantra |
| 09/01/2000 | Wagner | 1999 | Accent |
| 12/18/2001 | Pockrus | 1999 | Accent |
| 01/19/2002 | Powell | 1999 | Accent |
| 12/10/2002 | McKinney | 1998 | Sonata |
| 06/28/2002 | Whittiker | 1996 | Accent |
| 04/16/2003 | McDaniel | 2000 | Elantra |
| 09/23/2003 | Ironside | 2000 | Elantra |
| 01/08/2004 | Sanchez | 2000 | Elantra |
| 06/09/2004 | Harper | 1999 | Accent |

CP at 2354; Ex. 48.

¶70 Thus, the fault should lie with Hyundai, not Magana. Under CR 26(e)(2), Hyundai had the duty to fully disclose its documents. *See Thompson v. King Feed & Nutrition Serv., Inc.*, 153 Wn.2d 447, 462, 105 P.3d 378 (2005); *Seals v. Seals*, 22 Wn. App. 652, 654, 590 P.2d 1301 (1979). After all, CR 26(e)(2)(A) requires a party who obtains information that a discovery response was incorrect when made to amend the response to reflect the correction. *Thompson*, 153 Wn.2d at 462; *Seals*, 22 Wn. App. at 654. And CR 26(e)(2)(B) requires a party who obtains information that a discovery response is no longer true to amend the response to reflect the truth. *Thompson*, 153 Wn.2d at 462; *Seals,* 22 Wn. App. at 654. Finally, under CR 26(e)(2)(B), "a failure to amend the response [may be] in substance a knowing concealment."

---

[36] Hyundai notes that the vehicle identification number is actually for a non-Accent car. Br. of Appellant at 40.

¶71 And if a party disagrees with the scope of production, or wishes not to respond, it must move for a protective order. *Johnson v. Mermis*, 91 Wn. App. 127, 133, 955 P.2d 826 (1998). It cannot withhold discoverable materials. *Wash. State Physicians Inc. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 354, 858 P.2d 1054 (1993); *Johnson*, 91 Wn. App. at 133. A party's failure to comply with these rules may not be excused on grounds that the discovery sought is objectionable. CR 37(d); *see also Johnson*, 91 Wn. App. at 133-34. Under CR 37(a)(3), "an evasive or incomplete answer is to be treated as *a failure to answer*." (Emphasis added.) And under CR 37(d), "an evasive or misleading answer is to be treated as *a failure to answer*." (Emphasis added.)

¶72 Here, Hyundai *never* supplemented its responses, even though they were either incorrect when made or no longer true. And while the majority questions Magana's motives for requesting that Hyundai update its original discovery responses five months after our mandate issued and only four months before the scheduled trial date, majority at 516, our Supreme Court has stated the following rule:

> [W]here a party to an action, in clear and unambiguous terms under oath, asserts the existence or nonexistence of a fact whereof such party has knowledge, or in the ordinary course of affairs would be expected to have knowledge, the adverse party may rely on such statements and, in the exercise of reasonable diligence, is not required to look behind the statements.

*Kurtz v. Fels*, 63 Wn.2d 871, 875, 389 P.2d 659 (1964); *see also Seals*, 22 Wn. App. at 656. Thus, we can hardly fault Magana for relying on Hyundai's unambiguous, albeit evasive and/or incomplete, responses from 2000 until 2005. The majority claims, "It was Magana's choice to pursue additional discovery shortly before trial." Majority at 519. But it was Hyundai's responsibility to timely answer and supplement its discovery answers. *See Gammon v. Clark Equip. Co.*, 38 Wn. App. 274, 282, 686 P.2d 1102 (1984), *aff'd*, 104 Wn.2d 613, 707 P.2d 685 (1985). If Hyundai had fulfilled its

responsibilities and duties under CR 26 and CR 37, even *after* our remand, the majority would not be questioning Magana's actions.

¶73 But in determining whether Magana was prejudiced by Hyundai's actions, the majority once again questions Magana's actions, stating, "[W]e must take into account the plaintiff's choice of strategy in pursuing the case. . . . It was Magana's choice to pursue additional discovery shortly before trial. . . . [I]t is unclear why he requested additional evidence if the time required to investigate would have substantially prejudiced his case." Majority at 518-19 (footnote omitted).

¶74 And again, the majority faults Magana when it should fault Hyundai. Hyundai failed to disclose its documents before the second trial. Hyundai failed to disclose its documents after Magana requested it to do so. And, even after the trial court's order, Hyundai failed to timely and fully disclose its documents.[37] CP at 1027, 2354; Ex. 48.

¶75 Nevertheless, the majority still notes, "Hyundai complied with the trial court's order to compel production." Majority at 517 n.19. And the majority seems to imply that absent a failure to comply with a trial court's discovery order, sanctions against Hyundai are inappropriate. Majority at 517 n.19. But I note that Washington law holds otherwise.

¶76 A discovery order as provided in CR 37(a) and (b) is not necessarily a prerequisite to enforcement of the sanctions in CR 37(d). *See Pamelin Indus., Inc. v. Sheen-U.S.A., Inc.*, 95 Wn.2d 398, 401, 622 P.2d 1270 (1981). Our Supreme Court has summarized CR 37 as follows:

> Thus, it can be seen the rule provides two alternative sources of authority for granting sanctions under CR 37(b)(2). They are: (1) failure of a party to comply with an order entered pursuant to CR 37(a); and (2) failure of a party to respond to a request for discovery under CR 33 or CR 34.

---

[37] Hyundai finished producing the documents on January 6, 2006, after Magana had moved for a default judgment. CP at 1027, 2307-46, 2354, 4792-93; Ex. 48.

*Pamelin,* 95 Wn.2d at 401; *see also Charter House Ins. Brokers, Ltd. v. N.H. Ins. Co.,* 667 F.2d 600, 604 (7th Cir. 1981) (under Fed. R. Civ. P. 37(d), the court may impose sanctions directly, without first issuing an order to compel discovery); *Robison v. Transamerica Ins. Co.,* 368 F.2d 37, 39 (10th Cir. 1966) (it is generally agreed that Fed R. Civ. P. 37(d) permits an immediate sanction against parties for their willful failure to respond to discovery requests).

¶77 While fair and reasoned resistance to discovery is not sanctionable, it is the misleading nature of Hyundai's responses that is contrary to the purposes of discovery and most damaging to the fairness of the litigation process. *See Fisons,* 122 Wn.2d at 346. And requiring Magana to disrupt his trial presentation to accommodate Hyundai would reward noncompliance. *Gammon,* 38 Wn. App. at 282.

¶78 In fact, in support of his motion for a default judgment, Magana argued:

> Obviously plaintiffs in this case have little time to develop the evidence that has been supplied to them just weeks before trial. There is little chance to obtain the available information from the injured people or from their attorneys. There is little time for experts in this case to do a thorough review of the accidents produced to date or data assembled by plaintiff's attorneys. There is no time to note up depositions of the injured parties. Indeed, the discovery cutoff in this case has already run—and ran just days after the initial documents were produced to plaintiff. All of this puts plaintiff at a serious and perhaps insurmountable disadvantage.

CP at 2335.

¶79 This case is not one where Hyundai's evasive and/or incomplete answers affected only one or two issues on remand. On remand, the *sole* issue was whether Hyundai was liable for the allegedly defective occupant restraint system. *Magana v. Hyundai Motor Am.,* 123 Wn. App. 306, 319, 94 P.3d 987 (2004). Thus, Magana's trial preparation necessarily centered around investigating the requested

documents.[38] And many factors in this case support the trial court's finding that Magana was prejudiced by Hyundai's actions. These factors include (1) the evasive and/or incomplete nature of Hyundai's answers to Magana's discovery requests; (2) the proximity of the trial date and the effect Hyundai's answers would have on Magana's claims and Hyundai's defenses; (3) the requested documents were primarily within Hyundai's knowledge and control; (4) the nature of the action, i.e., simply whether Hyundai was liable for the allegedly defective occupant restraint system; and (5) the materiality of these documents to Magana's proper preparation for trial. *See, e.g., Associated Mortgage Investors*, 15 Wn. App. at 229-30.[39] In other words, Hyundai's actions prevented Magana from timely discovering essential facts and evidence pertaining to the litigation. *See, e.g., Associated Mortgage Investors*, 15 Wn. App. at 230.

¶80 Hyundai even suggests that "there is a very good chance that most—perhaps all—of the OSI's (other similar incidents) at issue would not be admissible at trial." Br. of Appellant at 79. While Hyundai focuses on whether its discovery violations were material, i.e., would probably change the result of the trial, the trial court properly focused on whether Hyundai's discovery violations "substantially prejudiced the opponent's ability to prepare for trial." *Burnet*, 131 Wn.2d at 494; *Roberson v. Perez*, 123 Wn. App. 320, 336, 96 P.3d 420 (2004), *review denied*, 155 Wn.2d 1002 (2005).

¶81 It may very well be that timely and complete answers to Magana's interrogatories and requests for production would have made no difference. And it may very well be that effective investigation would have made no difference.

---

[38] The parties refer to this discovery evidence as "[o]ther similar incidents" or OSI. As Hyundai notes, it "is a term of art in the products liability field familiar to practitioners." Br. of Appellant at 12 n.6.

[39] Although the majority is correct that we used these factors in *Associated Mortgage Investors* to consider the appropriateness of a sanction, majority at 517 n.19, these factors are just as relevant here in considering whether Magana was prejudiced by Hyundai's actions.

But that is not for us to decide.[40] *See Gammon*, 38 Wn. App. at 282.

¶82  In *Behr*, a case in which we found that the trial court properly entered a default judgment against a defendant for failing to disclose documents and information, we quoted with approval the trial court's explanation for finding that the plaintiffs were prejudiced:

> "I conclude that the discovery violations complained of suppressed evidence that was relevant, because it goes to the heart of the plaintiffs' claims, and it supports them. It's relevant in that it goes to the heart of the defenses raised by Behr, because it undermines them. The discovery violations here prevented the plaintiffs from doing what the law really allows them to do, and that's to follow up on leads from developed facts. They were off in one direction when they should have been working in another, and the only reason is they didn't know that the other existed.
>
> ". . . .
>
> "The evidence that has been discovered and the implications from that evidence that has been discovered in the last week or so is highly important. As I said, it bolsters the plaintiffs' case, it undermines positions that the defendant has taken, it suggests that the plaintiffs' problems may have a more particular cause, . . . it casts doubt on the discovery that has gone on before, it affects the work that the experts have done, at least the plaintiffs' experts.
>
> ". . . Perhaps nothing in the discovery of this case is as important as what was not disclosed."

---

[40] As Washington courts have repeatedly stated in affirming a trial court's order of a new trial as a remedy for a discovery violation:

> "[I]t cannot be stated with certainty that all of this would have changed the result of the case. But, as said by the Supreme Court, a litigant who has engaged in misconduct is not entitled to 'the benefit of calculation, which can be little better than speculation, as to the extent of the wrong inflicted upon his opponent.' Minneapolis, St. Paul & [Sault Ste.] Marie Ry. Co. v. Moquin, [ ] 283 U.S. 520, 521-522, 51 S.Ct. 501, [ ] 75 L.Ed 1243 [(1931)]."

*Gammon*, 38 Wn. App. at 282 (first alteration in original) (quoting *Seaboldt v. Pa. R.R.*, 290 F.2d 296, 300 (3d Cir. 1961)).

*Behr*, 113 Wn. App. at 325-26 (first and third alterations in original) (quoting Report of Proceedings (May 15, 2000) at 3, 5).

¶83 Here, I would similarly conclude that Hyundai's actions suppressed documents and information that were relevant, as they go to the heart of the issue on remand, i.e., whether Hyundai was liable for the allegedly defective occupant restraint system. Hyundai's actions have prevented Magana from " 'doing what the law really allows [him] to do, and that's to follow up on leads from developed facts.' " *Behr*, 113 Wn. App. at 325 (quoting Report of Proceedings (May 15, 2000) at 3, 5). Magana was " 'off in one direction when [he] should have been working in another [direction].' " *Behr*, 113 Wn. App. at 325 (quoting Report of Proceedings (May 15, 2000) at 3, 5). The documents potentially bolster Magana's case while potentially undermining Hyundai's case. " '[They] cast[ ] doubt on the discovery that has gone on before.' " *Behr*, 113 Wn. App. at 325 (quoting Report of Proceedings (May 15, 2000) at 3, 5). And, given the number of documents that were suppressed, " '[p]erhaps nothing in the discovery of this case is as important as what was not [initially] disclosed.' " *Behr*, 113 Wn. App. at 325 (quoting Report of Proceedings (May 15, 2000) at 3, 5). Finally, even if Magana were able to begin an investigation into these documents, it still does not alleviate the prejudice that Hyundai caused by withholding information that was relevant to Magana's theory of causation.[41] *See Behr*, 113 Wn. App. at 326.

¶84 Nevertheless, the majority concludes that "further investigation is likely to assist in resolving the merits of Magana's case." Majority at 519. Thus, the majority faults the trial court for imposing a default judgment, suggesting

---

[41] The majority implies that Hyundai timely produced the documents in compliance with the trial court's order. Majority at 517 n.19. But belated compliance with discovery orders does not necessarily preclude the imposition of sanctions. *See N. Am. Watch Corp. v. Princess Ermine Jewels*, 786 F.2d 1447, 1451 (9th Cir. 1986). "Last-minute tender of documents does not cure the prejudice to opponents nor does it restore to other litigants on a crowded docket the opportunity to use the courts." *N. Am. Watch Corp.*, 786 F.2d at 1451.

that it should have imposed a continuance. Majority at 519-20. Essentially, the majority questions the trial court's discretion in imposing a default judgment.

¶85 But the question, of course, is not whether we would have dismissed the action; it is whether the trial court abused its discretion in so doing. *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 642, 96 S. Ct. 2778, 49 L. Ed. 2d 747 (1976). It is proper to leave that determination to the trial court because it has " 'tasted the flavor' " of the litigation and is in the best position to make that determination.[42] *Burnet*, 131 Wn.2d at 509 (Talmadge, J., dissenting) (internal quotation marks omitted) (quoting *Watson v. Maier*, 64 Wn. App. 889, 896, 827 P.2d 311, *review denied*, 120 Wn.2d 1015 (1992)). And in making that determination, the trial court should consider whether the requested documents go to a dispositive issue in the case and whether the party seeking discovery may be protected by imposition of a sanction short of dismissal. *See Vickers v. City of Kansas City*, 216 Kan. 84, 93, 531 P.2d 113 (1975).

¶86 While the trial court should impose the least severe sanction sufficient to serve the purpose of the particular sanction, *Burnet*, 131 Wn.2d at 494, 497-98, we should not require the trial court to sequentially impose lesser sanctions before imposing the ultimate sanction of dismissal. *See Mallard's Pointe Condo. Ass'n v. L&L Investors Group, LLC*, 859 N.E.2d 360, 364 (Ind. Ct. App. 2006). Instead, the sanction simply should be proportional to the nature of the discovery violation and the surrounding circumstances. *Rivers v. Wash. State Conference of Mason Contractors*, 145 Wn.2d 674, 695, 41 P.3d 1175 (2002). "[*Burnet*] establishes a gauge for determining disproportionate sanctions." *Rivers*, 145 Wn.2d at 695.

---

[42] The language of CR 37 compels the conclusion that the trial court has the discretion to choose the most appropriate sanction suitable to the history and circumstances of the case before it. *See Vickers v. City of Kansas City*, 216 Kan. 84, 91, 531 P.2d 113 (1975).

¶87 Here, the trial court noted that a continuance would be unfair to Magana and would not punish Hyundai. CP at 5333. The trial court explained:

> 69. **Continuance.** The second possible sanction, which was the sole sanction proposed by defendants, is a continuance. Sanctions for discovery violations are not intended to reward the party who has committed the violations. Defendant Hyundai has sought a continuance in this case previously, which has been denied by the Court. The motion for a continuance would not remedy the staleness of the evidence in question; it would not remedy the difficulty of the Court in addressing these issues; it would involve further substantial costs to the parties in terms of analyzing the evidence with respect to their experts; it would involve substantial duplication of effort which . . . previously had been done in preparation and re-preparation for this trial. A continuance would only exacerbate that situation. It would not benefit the plaintiff, it would benefit the defendant. Therefore, a continuance is not an appropriate remedy.

CP at 5333.

¶88 Certainly, there is "a clear record of delay or contumacious conduct" by Hyundai. *Durham v. Fla. E. Coast Ry.*, 385 F.2d 366, 368 (5th Cir. 1967). After all, the facts show that Hyundai's noncompliance was due to its callous disregard for Magana's discovery requests, not due to its inability to comply. And I agree with the trial court that granting a continuance is not an appropriate remedy.

¶89 Here, a continuance places the burden on Magana, the innocent party, who must prepare again for a lengthy trial. *See Lampard v. Roth*, 38 Wn. App. 198, 201, 684 P.2d 1353 (1984). "Such preparation is costly to the parties, risks the loss of much of the original trial preparation, and burdens the other litigants on the court's trial calendar." *Lampard*, 38 Wn. App. at 201. Thus, a continuance that would allow Magana to investigate the documents and information would hardly be a satisfactory resolution of the problem. *Lampard*, 38 Wn. App. at 201; *see also Behr*, 113 Wn. App. at 329-30.

¶90 Moreover, a continuance effectively rewards Hyundai's noncompliance by allowing it a further opportunity to investigate the documents and refine its own trial strategy.[43] But such a result would go against the very purposes of discovery sanctions. As our Supreme Court stated in *Fisons*, "The purposes of sanctions orders are to deter, to punish, to compensate and to educate." *Fisons*, 122 Wn.2d at 356. "The sanction should insure that the wrongdoer does not profit from the wrong." *Fisons*, 122 Wn.2d at 356. And "[i]n fashioning an appropriate sanction, the trial judge must of necessity determine priorities in light of the deterrent, punitive, compensatory, and educational aspects of sanctions *as required by the particular circumstances.*" *Miller v. Badgley*, 51 Wn. App. 285, 303, 753 P.2d 530 (emphasis added), *review denied*, 111 Wn.2d 1007 (1988).

¶91 Clearly, given the particular circumstances in this case, the trial court determined that a continuance would not deter, punish, or educate Hyundai.[44] CP at 5333. And the trial court's decision is fully supported by the record. Therefore, because "[r]esolution of these matters lies within the informed discretion of the trial court," *Miller*, 51 Wn. App. at 304, we should not disturb the trial court's decision. *See Associated Mortgage Investors*, 15 Wn. App. at 229.

¶92 Moreover, the trial court also considered imposing other lesser sanctions; but ultimately, it rejected each in favor of a default judgment. CP at 5332-35. The trial court explained, as follows, why it did not impose a financial sanction:

---

[43] And a continuance would effectively overrule the trial court's earlier decision denying Hyundai's motion for a continuance, in which Hyundai noted that one of its trial attorneys, who had been selected because of his experience in accident reconstruction, occupant kinematics, and seat back design issues, was unable to prepare for trial because of family problems. RP (Jan. 13, 2006) at 63-64, 70.

[44] It is true that Magana sought to amend his complaint to add additional claims against Hyundai. CP at 4293-94. But Magana sought to amend his complaint *only* after Hyundai disclosed its documents in response to the trial court's order. CP at 4293-94. And when it became clear that Hyundai was seeking a continuance on account of its previous actions, Magana withdrew his motion to amend his complaint. RP (Jan. 13, 2006) at 62.

67. **Monetary Fine.** A monetary fine is a sanction considered by this Court. It would in some sense address the costs that have been incurred in connection with these proceedings regarding discovery violations and could serve the purposes of punishment and the other purposes of sanctions. It is very difficult to know what monetary amount would be appropriate in such case. Hyundai is a multi-billion dollar corporation. This is documented in Exhibit 23 to Peter O'Neil's declaration.

68. A monetary sanction would not in any way address the prejudice to the plaintiff or to the judicial system. Much of the OSI seat back failure evidence is irretrievable at this point, and there is no way that it can be adequately addressed by either the experts or by the Court or by a jury if it were to review it. A monetary fine would do nothing to serve the search for truth and justice, which is the purpose of this Court. The Court rejects this as an adequate sanction.

CP at 5332-33. Essentially, the trial court found that a monetary fine would not rectify Hyundai's wrong; instead, it would simply set a price on it.[45]

¶93 And we have agreed that a financial sanction may not always be a sufficient sanction, considering the nature of the discovery violation and the surrounding circumstances. In *Behr*, we relied on the trial court's explanation that a financial sanction " 'punishes the defendant to some extent, but it doesn't determine the plaintiffs' damages. It doesn't do anything to resolve the reason the plaintiffs came to court in the first place.' " *Behr*, 113 Wn. App. at 329 (quoting Report of Proceedings (May 15, 2000) at 23); *see also Gammon*, 38 Wn. App. at 282 ("Far from insuring that a wrongdoer not profit from his wrong, minimal terms

---

[45] I also note that Hyundai did not assign error to or challenge the damages award after the first trial, even though the damages award was for over eight million dollars. *Magana*, 123 Wn. App. at 313-14. It is hard to imagine Hyundai being concerned about any financial sanction if it was not concerned about a damages award for over eight million dollars. Otherwise, any financial sanction less than eight million dollars, which was the result of the default judgment in this case, would simply encourage Hyundai to embrace its tactics of evasion and delay.

would simply encourage litigants to embrace tactics of evasion and delay.").[46]

¶94 The trial court also explained, as follows, why it did not impose other sanctions:

> 70. **Other Sanctions Short of Default.** There are cases in which a number of other sanctions have been appropriate to the particular facts of the case. The Court ultimately determined that neither party was suggesting that other remedies would be particularly appropriate or workable in this case. . . . There are no counterclaims in this case and many issues, such as the allegation of contributory fault by plaintiff, were already decided and affirmed by the Court of Appeals. The Court has analyzed whether it might be appropriate to admit into evidence the OSIs in some manner or to admit some of them. Proceeding to trial as scheduled would be highly prejudiced by the admission of some or all of the evidence which has now been disclosed. It would be difficult to discuss this evidence. Plaintiff has not had the time to develop it; it cannot be developed as to many of the facts and circumstances involved in OSIs of seat back failures. Hyundai has asserted the defendant should have the opportunity to challenge those OSIs, to conduct discovery and, at the very least, to examine the facts of those OSIs, and to address this newly disclosed information. Ultimately both plaintiffs and defendants agreed that admitting OSI evidence without examination or challenge would not be a workable or appropriate remedy in this case. . . . It is therefore not an adequate or workable sanction.

CP at 5333-34.

¶95 Again, I agree with the trial court that these other sanctions are not an appropriate remedy.[47] At the evidentiary hearing, Magana's counsel dismissed the feasibility of simply admitting into evidence all or some of the

---

[46] *See also G-K Props. v. Redevelopment Agency*, 577 F.2d 645, 647 (9th Cir. 1978), wherein the Ninth Circuit Court of Appeals relied on the district court in noting that "to impose a fine would merely 'introduce into litigation a sporting chance theory encouraging parties to withhold vital information from the other side with the hope that the withholding may not be discovered and, if so, that it would only result in a fine.' "

[47] The imposition of a lesser sanction would merely add to the frustration and delay. *See Mulroe v. Angerman*, 492 N.E.2d 1077, 1079 (Ind. Ct. App. 1986).

OSIs, arguing that "[the] experts do not have adequate time to prepare and analyze and testify about these OSIs. They come in, sure, but then what? An expert can't really analyze them in relationship to the accident in this case, doesn't have time." RP (Jan. 19, 2006) at 41. Magana's counsel continued, "Only Hyundai's version of events is available." RP (Jan. 19, 2006) at 41. Finally, Magana's counsel emphasized, "So, these only show Hyundai's version of events, essentially are their Hyundai documents, not documents we could independently obtain. That's not going to be available to this jury, even if you tell them these facts are established." RP (Jan. 19, 2006) at 42.

¶96 And even Hyundai's counsel argued against simply admitting into evidence all or some of the OSIs. RP (Jan. 19, 2006) at 87-88, 92. Hyundai's counsel argued, "Let's take this again. All OSIs go into evidence? All OSIs? Were there Rule 403 risks involved here? You're willing to let all of these in, . . . where they make no attempt to demonstrate— and we didn't hide these facts from them about, you know, engineering facts." RP (Jan. 19, 2006) at 87. Hyundai's counsel continued:

> Let's take their theory of the gold standard seriously. If this is the gold standard, you guarantee an unfair trial. You guarantee it. The risk of confusion isn't a risk any more. It's guaranteed. I don't see how they can be managed. . . . We don't get to challenge foundation or anything else.
>
> If that can't work, they say no defense cross-examination argument or ability to contradict OSI evidence or seat back test evidence. And they say the Court is to instruct the jury that Hyundai violated its discovery obligations by withholding OSI documents? Stop. What has that got to do with the gold standard?

RP (Jan. 19, 2006) at 87-88. Finally, Hyundai's counsel clearly stated, "I think admitting this massive OSI evidence is a guarantee that the problems under Evidence Rule 403 are going to occur. It's tantamount to a default, Your Honor. Admitting all the OSI evidence is tantamount to a default. We might as well skip the trial." RP (Jan. 19, 2006) at 92.

¶97 Here, the trial court " 'tasted the flavor' " of the litigation and its decision not to impose these other sanctions is fully supported by the record. *Burnet*, 131 Wn.2d at 509 (Talmadge, J., dissenting) (internal quotation marks omitted) (quoting *Watson*, 64 Wn. App. at 896). "As the trial court properly set forth its reasons on the record and those reasons are neither unreasonable nor untenable, its decision to grant the default judgment was within its broad discretion." *Behr*, 113 Wn. App. at 330 (emphasis added). I note:

> Trial courts are on the front lines of our civil justice system, dealing with sometimes recalcitrant attorneys and the myriad considerations of prosecuting a case. The trial courts develop intimate knowledge of cases from such involvement and they should be permitted to manage the discovery process. We should not disturb such management unless the record indicates the trial court has clearly abused its discretion.

*Burnet*, 131 Wn.2d at 512 (Talmadge, J., dissenting).

¶98 Furthermore, the Supreme Court has warned against substituting our judgment for that of the trial court:

> There is a natural tendency on the part of reviewing courts, properly employing the benefit of hindsight, to be heavily influenced by the severity of outright dismissal as a sanction for failure to comply with a discovery order. It is quite reasonable to conclude that a party who has been subjected to such an order will feel duly chastened, so that even though he succeeds in having the order reversed on appeal he will nonetheless comply promptly with future discovery orders of the district court.
>
> But here, as in other areas of the law, the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent. If the decision of the Court of Appeals remained undisturbed in this case, it might well be that *these* respondents would faithfully comply with all future discovery orders entered by the District Court in

this case. But other parties to other lawsuits would feel freer than we think Rule 37 contemplates they should feel to flout other discovery orders of other district courts.

*Nat'l Hockey League*, 427 U.S. at 642-43.

¶99 Finally, I note that:

> Too often, cases in which trial court judges exercise firm case management are reversed by this Court or other appellate courts. Unfortunately, the majority opinion sends the message to trial court judges that this Court gives only lip service to strong case management by trial judges. This Court should instead send a resounding message to trial courts, lawyers, and parties: we do not condone "obstreperous" conduct of counsel, we support firm case management by Washington's trial judges, and we will not permit litigation to languish forever in our courts.

*Burnet*, 131 Wn. App. at 513 (Talmadge, J., dissenting).

¶100 Therefore, based on the egregious nature of Hyundai's willful and evasive tactics in responding to Magana's discovery requests, I would find that the trial court was well within its discretion to grant the default judgment. Thus, I would affirm the default judgment.

Review granted at 164 Wn.2d 1020 (2008).